COMMISSIONER OF INTERNAL REVENUE *v.*
ESTATE OF HUBERT, DECEASED, C & S
SOVRAN TRUST CO. (GEORGIA) N. A.,
CO-EXECUTOR

No. 95–1402.   Argued November 12, 1996—Decided March 18, 1997

94

*Kent L. Jones* argued the cause for petitioner. With him on the briefs were *Solicitor General Days, Acting Solicitor General Dellinger, Assistant Attorney General Argrett, Deputy Solicitor General Wallace, Jonathan S. Cohen,* and *Joan I. Oppenheimer.*

*David D. Aughtry* argued the cause for respondent. With him on the brief was *Shelley Cashion.**

---

*Briefs of *amici curiae* urging affirmance were filed for the American College of Trust and Estate Counsel by *Edward F. Koren* and *Alvin J. Golden;* for the American Council on Education et al. by *Matthew J. Zinn* and *Carol A. Rhees;* for the Baptist Foundation of Texas et al. by *Terry L. Simmons, pro se;* and for the Tax Section of The Florida Bar by *Jerald David August* and *James J. Freeland.*

JUSTICE KENNEDY announced the judgment of the Court and delivered an opinion, in which THE CHIEF JUSTICE, JUSTICE STEVENS, and JUSTICE GINSBURG join.

In consequence of life's two certainties a decedent's estate faced federal estate tax deficiencies, giving rise to this case. The issue is whether the amount of the estate tax deduction for marital or charitable bequests must be reduced to the extent administration expenses were paid from income generated during administration by assets allocated to those bequests.

I

The estate of Otis C. Hubert was substantial, valued at more than $30 million when he died. Considerable probate and civil litigation ensued soon after his death. The parties to the various proceedings included his wife and children; his nephew; one of the estate's coexecutors, Citizens and Southern Trust Company (Georgia), N. A., the predecessor of respondent C & S Sovran Trust Company (Georgia), N. A.; the district attorney for Cobb County, Georgia, on behalf of certain charitable beneficiaries; and the Georgia State Revenue Commission. Hubert had made various wills and codicils, and the legal disputes for the most part concerned the distribution of estate assets; but they were not confined to this. In addition to will contests alleging fraud and undue influence, there were satellite civil suits including claims of slander and abuse of process. The principal proceedings were in the Probate and the Superior Courts of Cobb County, Georgia.

The estate attracted the attention of petitioner, the Commissioner of Internal Revenue. The executors filed the federal estate tax return in 1987, about a year after Hubert died. In 1990, the Commissioner issued a notice of deficiency, claiming underreporting of federal estate tax liability by some $14 million. The Commissioner's major challenge then was to the estate's claimed entitlement to two deduc-

tions. One was the marital deduction, under 68A Stat. 392, as amended, 26 U. S. C. § 2056, for qualifying property passing from a decedent to the surviving spouse. The other was the charitable deduction, under § 2055, for qualifying property passing from a decedent to a charity. The Commissioner's notice of deficiency asserted, for reasons not relevant here, that the property passing to Hubert's surviving wife and to charity did not qualify for the marital and charitable deductions. The estate petitioned the United States Tax Court for a redetermination of the deficiency.

Within days of the estate's petition in the Tax Court, much of the other litigation surrounding the estate settled. The settlement agreement divided the estate's residue principal between a marital and a charitable share, which we can assume for purposes of our discussion were worth a total of $26 million on the day Hubert died. The settlement agreement divided the $26 million principal about half to trusts for the surviving spouse and half to a trust for the charities. The Commissioner stipulated that the nature of the trusts did not prevent them from qualifying for the marital and charitable deductions. The stipulation streamlined the Tax Court litigation but did not resolve it.

The settlement agreement provided that the estate would pay its administration expenses either from the principal or from the income of the assets that would comprise the residue and the corpus of the trusts, preserving the discretion Hubert's most recent will had given his executors to apportion administration expenses. The apportionment provisions of the agreement and the will were consistent for all relevant purposes with the law of Georgia, the State where the decedent resided. The estate's administration expenses, including attorney's fees, were on the order of $2 million. The estate paid about $500,000 in expenses from principal and the rest from income.

The estate recalculated its estate tax liability based on the settlement agreement and the payments from principal.

The estate did not include in its marital and charitable deductions the amount of residue principal used to pay administration expenses. The parties here have agreed throughout that the marital or charitable deductions could not include those amounts. The estate, however, did not reduce its marital or charitable deductions by the amount of the income used to pay the balance of the administration expenses. The Commissioner disagreed and contended that use of income for this purpose required a dollar-for-dollar reduction of the amounts of the marital and charitable deductions.

In a reviewed opinion, the Tax Court, with two judges concurring in part and dissenting in part, rejected the Commissioner's position. 101 T. C. 314 (1993). The court noted it had resolved the same issue against the Commissioner in *Estate of Street* v. *Commissioner*, 56 TCM 774, 57 TCM 2851 (1988), ¶ 88,553 P–H Memo TC. The Court of Appeals for the Sixth Circuit had reversed this aspect of *Estate of Street*, see 974 F. 2d 723, 727–729 (1992), but in the instant case the Tax Court adhered to its view and said, given all the circumstances here, no reduction was required by reason of the executors' power, or the exercise of their power, to pay administration expenses from income. The Court of Appeals for the Eleventh Circuit affirmed the Tax Court, adopting the latter's opinion and noting the resulting conflict with the Sixth Circuit's decision in *Street* and with the Court of Appeals for the Federal Circuit's decision in *Burke* v. *United States*, 994 F. 2d 1576, cert. denied, 510 U. S. 990 (1993). See 63 F. 3d 1083, 1084–1085 (CA11 1995). We granted certiorari, 517 U. S. 1166 (1996), and, in agreement with the Tax Court and the Court of Appeals for the Eleventh Circuit, we now affirm the judgment.

## II

A necessary first step in calculating the taxable estate for federal estate tax purposes is to determine the property in-

cluded in the gross estate, and its value. Though an alternative valuation date is authorized, the executors of the Hubert estate used the standard date-of-death valuation. See 26 U. S. C. §§ 2031(a), 2051. A later step is to compute any claimed charitable or marital deductions. See §§ 2055 (charitable), 2056 (marital). Our inquiry here involves the relationship between valuation principles and those computations. The language of the charitable and marital deduction sections differs. For instance, § 2056 requires consideration, in valuing a marital bequest, of obligations or encumbrances the decedent imposes on the bequest, "in the same manner as if the amount of a gift to such spouse of such interest were being determined." § 2056(b)(4). Section 2055 has no similar language. Treasury Reg. § 20.2056(b)–4(a), 26 CFR § 20.2056(b)–4(a) (1996), moreover, has amplified aspects of the marital deduction statute, as we discuss. There is no similar regulation for the charitable deduction statute. These differences notwithstanding, the Commissioner and respondent agree that, for purposes of the question presented, the two deduction statutes should be read to require the same answer. We adopt this approach. For the issue we decide, the marital deduction statute and regulation speak in more specific terms than the charitable deduction statute, so we concentrate on the marital provisions. Our holding in the case applies to both deductions.

We begin with the language of the marital deduction statute. It allows an estate to deduct for federal estate tax purposes "an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate." 26 U. S. C. § 2056(a).

The statute allows deduction for qualifying property only to the extent of the property's "value." So when the executors value the property for gross estate purposes as of the date of death, the value of the marital deduction will be lim-

ited by its date-of-death value. This is directed by the statutory language capping the deduction at "the value of any interest . . . included in determining the value of the gross estate." It is made explicit by Treas. Reg. § 20.2056(b)–4(a), which says "value, for the purpose of the marital deduction . . . is to be determined as of the date of the decedent's death [unless the estate uses the alternative valuation date]."

Section 20.2056(b)–4(a) provides that "value" for marital deduction purposes is "net value," determined by applying "the same principles . . . as if the amount of a gift to the spouse were being determined." Section 25.2523(a)–1, entitled "Gift to spouse; in general," includes a subsection (e), entitled "Valuation," which parallels § 20.2056(b)–4(d); see also § 20.2055–2(f)(1). Section 25.2523(a)–1(e) provides:

> "If the income from property is made payable to the donor or another individual for life or for a term of years, with remainder to the donor's spouse . . . the marital deduction is computed . . . with respect to the present value of the remainder, determined under [26 U. S. C. §]7520. The present value of the remainder (that is, its value as of the date of gift) is to be determined in accordance with the rules stated in § 25.2512–5 or, for certain prior periods, § 25.2512–5A."

Section 7520, in turn, refers to present-value tables located in regulation § 20.2031–7. The question presented here, involving date-of-death valuation of property or a principal amount, some of the income from which may be used to pay administration expenses, is not controlled by the exact terms of these provisions. For that reason, we do not attempt to force it into their detailed mold. It is natural, however, to apply the present-value principle to the question at hand, as we are directed to do by § 20.2056(b)–4(a). In other words, assuming it were necessary for valuation purposes to take into account that income, see *infra*, at 106–107 (discussing materiality), this would be done by subtracting from the

value of the bequest, computed as if the income were not subject to administration expense charges, the present value (as of the controlling valuation date) of the income expected to be used to pay administration expenses.

Our application of the present-value principle to the issue here is further supported by Justice Holmes' explanation of valuation theory in his opinion for the Court in *Ithaca Trust Co.* v. *United States,* 279 U.S. 151 (1929). The decedent there bequeathed the residue of his estate in trust to charity, subject to a particular life interest in his wife. After holding that the charitable bequest qualified for the charitable deduction under the law as it stood in 1929, the Court considered how to value the bequest. The Government argued the value should be reduced to reflect the wife's probable life expectancy as of the date the decedent died. The estate argued for a smaller reduction than the Government, because by the time of the litigation it was known that the wife had, in fact, lived for only six months after the decedent died. Justice Holmes wrote:

> "The first impression is that it is absurd to resort to statistical probabilities when you know the fact. But this is due to inaccurate thinking. . . . [Value] depends largely on more or less certain prophecies of the future; and the value is no less real at that time if later the prophecy turns out false than when it comes out true. . . . Tempting as it is to correct uncertain probabilities by the now certain fact, we are of opinion that it cannot be done. . . . Our opinion is not changed by the necessary exceptions to the general rule specifically made by the Act." *Id.,* at 155.

So the charitable deduction had to be valued based on the wife's probable life expectancy as of the date of death rather than the known fact that she died only six months after her husband.

It is suggested that § 20.2056(b)–4(a)'s direction to value the marital deduction as a spousal gift refers to a gift tax qualification regulation, § 25.2523(e)–1(f), and a Revenue Ruling interpreting it, Rev. Rul. 69–56, 1969–1 Cum. Bull. 224. *Post*, at 116 (O'CONNOR, J., concurring in judgment). The suggestion misunderstands the regulations and the Revenue Ruling. Section 20.2056(b)–4(a) concerns how to determine the "value, for the purpose of the marital deduction, of any deductible interest." Before determining an interest's value under § 20.2056(b)–4(a), one must decide the extent to which the interest qualifies as deductible.

There is a structural problem with interpreting § 20.2056(b)–4(a) as directing reference to § 25.2523(e)–1(f) for valuation purposes. Qualification and valuation are different steps. Section 25.2523(e)–1(f) prescribes conditions under which an interest transferred in trust qualifies for a marital deduction under the gift tax. It tracks the language of § 20.2056(b)–5(f), which prescribes the same conditions for determining whether an interest transferred in trust qualifies for a marital deduction under the estate tax. Any interest to which § 25.2523(e)–1(f) would apply, were its principles understood to be incorporated into § 20.2056(b)–4(a), would, of necessity, already have been analyzed under the same principles at the earlier, qualification stage of the estate-tax marital-deduction inquiry under § 20.2056(b)–5(f). So under the suggested interpretation, whether or not an interest passed the qualification test, there would never be a need to value it. If it failed, there would be nothing to value; if it passed, its value would never be reduced at the valuation stage. The qualification step of the estate-tax marital-deduction inquiry would render the valuation step superfluous.

We do not think the Commissioner adopted this view of the regulations in Revenue Ruling 69–56. The Revenue Ruling held that a trustee's power to:

"charge to income or principal, executor's or trustee's commissions, legal and accounting fees, custodian fees, and similar administration expenses . . . [does] not result

.          .          .          .          .

"[does] in the disallowance or diminution of the marital deduction for estate and gift tax purposes unless the execution of such directions would or the exercise of such powers could, cause the spouse to have less than substantially full beneficial enjoyment of the particular interest transferred." Rev. Rul. 69–56, 1969–1 Cum. Bull. 224.

The Revenue Ruling cites for this proposition §§ 20.2056(b)–5(f)(1) and 25.2523(e)–1(f)(1), parts of the estate and gift tax qualification regulations discussed above. The qualification regulations provide that an interest may qualify as deductible only in part. Where that happens, the deduction need not be disallowed but it must be diminished. See, e. g., § 20.2056(b)–5(b); § 25.2523(e)–1(b); see also 26 U. S. C. §§ 2056(b)(5), 2523(e). It is in this qualification context that the Revenue Ruling speaks of "diminution" of the marital deduction. There is no dispute the entire interests transferred in trust here qualify for the estate tax marital and charitable deductions, respectively. The question before us is one of valuation. Sections 25.2523(e)–1(f) and 20.2056(b)–5(f) and Revenue Ruling 69–56 do not bear on our inquiry.

The parties here agree that the marital and charitable deductions had to be reduced by the amount of marital and charitable residue principal used to pay administration expenses. The Commissioner contends that the estate must reduce its marital and charitable deductions by the amount of administration expenses paid not only from principal but also, and in all events, from income and by a dollar-for-dollar amount. The Commissioner cites the controlling regulation in support of her position. The regulation says:

"The value, for the purpose of the marital deduction, of any deductible interest which passed from the decedent to his surviving spouse is to be determined as of the date of the decedent's death [unless the estate uses the alternative valuation date]. The marital deduction may be taken only with respect to the net value of any deductible interest which passed from the decedent to his surviving spouse, the same principles being applicable as if the amount of a gift to the spouse were being determined. In determining the value of the interest in property passing to the spouse account must be taken of the effect of any material limitations upon her right to income from the property. An example of a case in which this rule may be applied is a bequest of property in trust for the benefit of the decedent's spouse but the income from the property from the date of the decedent's death until distribution of the property to the trustee is to be used to pay expenses incurred in the administration of the estate." 26 CFR § 20.2056(b)–4(a) (1996).

The regulation does not help the Commissioner. It says a limitation providing that income "is to be used" throughout the administration period to pay administration expenses "may" be material in a given case and, if it is, account must be taken of it for valuation purposes as if it were a gift to the spouse, as we have discussed, see *supra*, at 101–102. The Tax Court was quite accurate in its description of the regulation when it said:

"That section is merely a valuation provision which requires material limitations on the right to receive income to be taken into account when valuing the property interest passing to the surviving spouse. The fact that income from property is to be used to pay expenses during the administration of the estate is not necessarily

a material limitation on the right to receive income that would have a significant effect on the date-of-death value of the property of the estate." 101 T. C., at 324–325.

There is no indication in the case before us that the executor's power to charge administration expenses to income is equivalent to an express postponement of the spouse's right to income beyond a reasonable period of administration. Cf. 26 CFR § 20.2056(b)–5(f)(9) (1996) (requiring valuation of express postponements of the spouse's right to income beyond a reasonable period of administration). By contrast, we have no difficulty conceiving of situations where a provision requiring or allowing administration expenses to be paid from income could be deemed a "material limitation" on the spouse's right to income. Suppose the decedent's other bequests account for most of the estate's property or that most of its assets are nonincome producing, so that the corpus of the surviving spouse's bequest, and the income she could expect to receive from it, would be quite small. In these circumstances, the amount of the estate's anticipated administration expenses chargeable to income may be material as compared with the anticipated income used to determine the assets' date-of-death value. If so, a provision requiring or allowing administration expenses to be charged to income would be a material limitation on the spouse's right to income, reducing the marital bequest's date-of-death value and the allowable marital deduction.

Whether a limitation is "material" will also depend in part on the nature of the spouse's interest in the assets generating income. This analysis finds strong support in the text of § 20.2056(b)–4(a). The regulation gives an example of where a limitation on the right to income "may" be material—bequests "in trust" for the benefit of a decedent's spouse. The example suggests a significant difference between a bequest of income and an outright gift of the fee interest in the income-producing property. A fee in the

same interest will almost always be worth much more. Where the value of the trust to the beneficiaries is derived solely from income, an obligation to pay administration expenses from that income is more likely to be "material." In the case of a specific bequest of income, for example, valued only for its future income stream, a diversion of that income would be more significant. The marital property in this case, however, comprising trusts involving either a general power of appointment (the GPA trust) or an irrevocable election (the QTIP trust), was valued as being equivalent to a transfer of the fee. See Brief for Petitioner 8–9, n. 1 ("[T]he corpus of both trusts is includable in the estate of the surviving spouse"). As a result, the limitation on the right to income here is less likely to be material. The inquiry into the value of the estate's anticipated administration expenses should be just as administrable, if not more so, than valuing property interests like going-concern businesses, see, e. g., § 20.2031–3, involving much greater complexity and uncertainty.

The Tax Court concluded here: "On the facts before us, we find that the trustee's discretion to pay administration expenses out of income is not a material limitation on the right to receive income." 101 T. C., at 325. The Tax Court did not specify the facts it considered relevant to the materiality inquiry. As we have explained, however, the Commissioner does not contend the estate failed to give adequate consideration to expected future administration expenses as of the date of death in determining the amount of the marital deduction. We have no basis to reverse for the Tax Court's failure to elaborate. Here, given the size and complexity of the estate, one might have expected it to incur substantial litigation costs. But the anticipated expenses could nonetheless have been thought immaterial in light of the income the trust corpus could have been expected to generate.

The major disagreement in principle between the Tax Court majority and dissenters involved the distinction be-

tween expected and actual income and expenses. Judge Halpern's opinion, joined by Judge Beghe, explained:

> "I believe the majority is undone by its view that income earned on estate property is not included in the gross estate. Once it is accepted that income earned on estate property (as anticipated at the appropriate valuation date) *is* included in the gross estate, the next question is whether, but for the use of such income to pay administration expenses, it would be received by the surviving spouse or charitable beneficiary. If the answer is yes, then it follows easily that, when such income is used for administration expenses, rather than received by the surviving spouse or charitable beneficiary, the value of the interest passing from the decedent to the surviving spouse or charitable beneficiary is decreased." *Id.*, at 342–343 (opinion concurring in part and dissenting in part).

The Tax Court dissenters recognized that only anticipated, not actual, income is included in the gross estate, as the gross estate is based on date-of-death value. See also *id.*, at 342, n. 5 (opinion of Halpern, J.) ("It is true, of course, that income actually earned on . . . property [included in valuing the gross estate] during the period of estate administration is not included in the gross estate. The gross estate, however, does include the discounted value of post mortem income expected *to be earned during estate administration*" (emphasis deleted)). The dissenters failed to recognize that following their own logic, as a general rule, assuming compliance with § 20.2056(b)–4(a)'s limitation to relevant facts on the controlling valuation date, only anticipated administration expenses payable from income, not the actual ones, affect the date-of-death value of the marital or charitable bequests. The dissenters were, in a sense, a step closer to § 25.2523(a)–1(e)'s present-value approach than the Commissioner, for they would have required the estate to reduce the marital or char-

itable deduction by only the discounted value of the actual administration expenses, whereas the Commissioner insists on a dollar-for-dollar reduction. The dissenters' wait-and-see approach to the valuation inquiry, however, is still at odds with the valuation inquiry required by the regulations: What is the net value of the marital or charitable bequest on the controlling valuation date, determined as if it were a gift to the spouse?

The Commissioner directs us to the language of § 2056(b)(4), which says:

> "In determining . . . the value of any interest in property passing to the surviving spouse for which a deduction is allowed by this section—
>
> . . . . .
>
> "(B) where such interest or property is encumbered in any manner, or where the surviving spouse incurs any obligation imposed by the decedent with respect to the passing of such interest, such encumbrance or obligation shall be taken into account in the same manner as if the amount of a gift to such spouse of such interest were being determined."

We interpreted this language in *United States* v. *Stapf,* 375 U. S. 118 (1963). The husband's will there gave property to his wife, conditioned on her relinquishing other property she owned to the couple's children. We held that the husband's estate was entitled to a marital deduction only to the extent the value of the property the husband gave his wife exceeded the value of the property she relinquished to receive it. The marital deduction, we explained, should not exceed the "net economic interest received by the surviving spouse." *Id.,* at 126. The statutory language, as we interpreted it in *Stapf,* is consistent with our analysis here. Where the will requires or allows the estate to pay administration expenses from income that would otherwise go to the surviving spouse, our analysis requires that the marital

deduction reflect the date-of-death value of the expected future administration expenses chargeable to income if they are material as compared with the date-of-death value of the expected future income. Using this approach to valuation, the estate will arrive at the "net economic interest received by the surviving spouse." *Ibid.*

For the first time at oral argument, the Commissioner suggested that the reduction she seeks is necessary to avoid a "double deduction" in violation of 26 U. S. C. § 642(g). Under § 642(g), an estate may take an estate tax deduction for administration expenses under § 2053(a)(2), or it may take them, if deductible, off its taxable income, but it may not do both. The so-called double deduction argument is rhetorical, not statutory. As our colleagues in dissent recognize, "nothing in § 642(g) *compels* the conclusion that the marital (or charitable) deduction must be reduced whenever an estate elects to deduct expenses from income." *Post*, at 137 (SCALIA, J., dissenting) (emphasis in original). The Commissioner nevertheless suggests that, unless we reduce the estate's marital deduction by the amount of administration expenses paid from income and deducted on its income tax, the estate will receive a deduction for them on its income tax as well as a deduction for them on its estate tax in the form of inflated marital and charitable deductions. See Tr. of Oral Arg. 12, 15. The marital and charitable estate tax deductions do not include income, however. When income is used, consistent with state law and the will, to pay administration expenses, this does not require that the estate tax deductions be diminished. The deductions include asset values determined with reference to expected income, but under our analysis the values must also be reduced to reflect material expected administration expense charges to which that income may be subjected. As noted above, the Commissioner has not contended the estate's marital and charitable deductions fail to reflect such expected payments. So

there is no basis for the double deduction argument.   Our analysis is consistent with the design of the statute.

The Commissioner also invites our attention to the legislative history of the marital deduction statute.   Assuming for the sake of argument it would have relevance here, it does not support her position.   The Senate Report accompanying the statute says:

> "The interest passing to the surviving spouse from the decedent is only such interest as the decedent can give.   If the decedent by his will leaves the residue of his estate to the surviving spouse and she pays, or if the estate income is used to pay, claims against the estate so as to increase the residue, such increase in the residue is acquired by purchase and not by bequest.   Accordingly, the value of any additional part of the residue passing to the surviving spouse cannot be included in the amount of the marital deduction."   S. Rep. No. 1013, 80th Cong., 2d Sess., pt. 2, p. 6 (1948).

The Report supports our analysis.   It underscores that valuation for marital deduction purposes occurs on the date of death.

The Commissioner's position is inconsistent with the controlling regulations.   The Tax Court and the Court of Appeals were correct in finding for the taxpayer on these facts, and we affirm the judgment.

*It is so ordered.*

JUSTICE O'CONNOR, with whom JUSTICE SOUTER and JUSTICE THOMAS join, concurring in the judgment.

"Logic and taxation are not always the best of friends." *Sonneborn Brothers* v. *Cureton,* 262 U. S. 506, 522 (1923) (McReynolds, J., concurring).   In cases like the one before us today, they can be complete strangers.   That our tax laws can at times be in such disarray is a discomforting thought. I can understand why the plurality attempts to extrapolate

a generalized estate tax valuation theory from one regulation and then to apply that theory to resolve this case, perhaps with the hope of making sense out of the applicable law. But where the applicability—not to mention the validity—of that theory is far from clear, the temptation to make order out of chaos at any cost should be resisted, especially when the question presented can be resolved—albeit imperfectly—by reference to more directly applicable sources. While JUSTICE SCALIA, JUSTICE BREYER, and I agree on this point, we disagree on the result ultimately dictated by these sources. I therefore write separately to explain why in my view the plurality's result, though not its reasoning, is correct.

## I

When a citizen or resident of the United States dies, the Federal Government imposes a tax on "all [of his] property, real or personal, tangible or intangible, wherever situated." 26 U. S. C. §§ 2001(a), 2031(a). Specifically excluded from taxation, however, is certain property devised to the decedent's spouse or to charity. Such testamentary gifts may qualify for the marital deduction, § 2056(a), or the charitable deduction, § 2055(a). If they do, they are removed from the decedent's "gross estate" and exempted from the estate tax. § 2051. Calculating the estate tax, however, takes time, as does marshaling the decedent's property and distributing it to the ultimate beneficiaries. During this process, the assets in the estate often earn income and the estate itself incurs administrative expenses. To deal with this eventuality, the Tax Code permits an estate administrator to choose between allocating these expenses to the assets in the estate at the time of death (the estate principal), or to the postmortem income earned by those assets. § 642(g). Everyone agrees that when these expenses are charged against a portion of the estate's principal devised to the spouse or charity, that portion of the principal is diverted from the spouse or charity and the marital and charitable deductions are accord-

ingly "reduced" by the actual amount of expenses incurred. See *ante,* at 104 (plurality opinion); *post,* at 123 (SCALIA, J., dissenting); Brief for Petitioner 19; Brief for Respondent 6. The question presented here is what becomes of these deductions when the estate chooses the second option under § 642(g) and allocates administrative expenses to the postmortem income generated by the property in the spousal or charitable devise.

The Tax Code itself supplies no guidance. Accord, *post,* at 127 (SCALIA, J., dissenting). The statute most relevant to this case, 26 U. S. C. § 2056(b)(4)(B), provides:

> "[W]here [any interest in property otherwise qualifying for the marital deduction] is encumbered in any manner, or where the surviving spouse incurs any obligation imposed by the decedent with respect to the passing of such interest, such encumbrance or obligation shall be taken into account in the same manner as if the amount of a gift to such spouse of such interest were being determined."

Although an executor's power to burden the postmortem income of the marital bequest with the estate's administrative expenses is arguably an "encumbrance" or an "obligation imposed by the decedent with respect to the passing of such interest," the statute itself says only that the "encumbrance or obligation shall be taken into account." It does not explain how this should be done, however. In my view, it is not possible to tell from § 2056(b)(4)(B) whether allocation of administrative expenses to postmortem income reduces the marital deduction always, sometimes, or not at all.

Nor does the Code's legislative history give shape to its otherwise ambiguous language. The discussion in the Senate Report of § 2056(b)(4)(B)'s predecessor statute reads:

> "The interest passing to the surviving spouse from the decedent is only such interest as the decedent can give. If the decedent by his will leaves the residue of his es-

tate to the surviving spouse and she pays, or *if the estate income is used to pay, claims against the estate so as to increase the residue, such increase in the residue is acquired by purchase and not by bequest. Accordingly, the value of any such additional part of the residue passing to the surviving spouse cannot be included in the amount of the marital deduction.*" S. Rep. No. 1013, 80th Cong., 2d Sess., pt. 2, p. 6 (1948) (emphasis added).

This italicized passage might be helpful if it explicitly referred to "administrative expenses" instead of "claims against the estate." But it is not at all clear from the Senate Report whether the latter term includes the former: The Report nowhere defines the term "claims against the estate," and the immediately preceding paragraph discusses § 2056(b)(4)(B)'s language with reference to mortgages. *Ibid.* Because mortgages differ from administrative expenses in many ways (*e. g.,* mortgages pre-exist the decedent's death and are fixed in amount at that time), there is a reasonable argument that administrative expenses are not "claims against the estate." In sum, the Code's legislative history is not illuminating.

## II

All that remains in this statutory vacuum are the Commissioner's regulations and Revenue Rulings, and it is on these sources that I would decide this issue. The key regulation is 26 CFR § 20.2056(b)–4(a) (1996):

"The value, for the purpose of the marital deduction, of any deductible interest which passed from the decedent to his surviving spouse is to be determined as of the date of the decedent's death . . . . The marital deduction may be taken only with respect to the net value of any deductible interest which passed from the decedent to his surviving spouse, the same principles being applica-

ble as if the amount of a gift to the spouse were being determined. In determining the value of the interest in property passing to the spouse account must be taken of the effect of any material limitations upon her right to income from the property."

The text of the regulation leaves no doubt that only the "net value" of the spousal gift may be deducted. Moreover, there is little doubt that, in assessing this "net value," one should examine how the spousal devise would have been treated if it were instead an *inter vivos* gift. See 26 U. S. C. § 2056(b)(4)(A) (also referring to treatment of gifts).

The plurality latches onto 26 CFR § 25.2523(a)–1(e) (1996), and to the statutes and regulations to which it refers. *Ante,* at 101–102 (referring to 26 U. S. C. § 7520; 26 CFR § 20.2031–7 (1996)). In the plurality's view, these regulations define how to "tak[e] [account] of the effect of any material limitations upon [a spouse's] right to income from the property." 26 CFR § 20.2056(b)–4(a) (1996). The plurality frankly admits that these regulations do not speak directly to the antecedent inquiry—when an executor's right to allocate administrative expenses to income constitutes a "material limitation." *Ante,* at 106. The plurality nevertheless believes that these regulations bear *indirectly* on this inquiry by implying an underlying estate tax valuation theory that, in the plurality's view, dovetails nicely with our decision in *Ithaca Trust Co.* v. *United States,* 279 U. S. 151 (1929). *Ante,* at 102. It is on the basis of this valuation theory that the plurality is able to conclude that the Tax Court's analysis was wrong because that analysis did not, consistent with the plurality's theory, focus solely on *anticipated* administrative expenses and *anticipated* income. *Ante,* at 107–109. But, as JUSTICE SCALIA points out, the plurality's valuation theory is not universally applicable and, in fact, conflicts with the Commissioner's treatment of some other expenses. See 26 CFR § 20.2056(b)–4(c) (1996); *post,* at 133–136. Because § 25.2523(a)–1(e) and its accompanying provisions do no more

than suggest an estate tax valuation theory that itself has questionable value in this context, these provisions do not in my view provide any meaningful guidance in this case.

The Tax Court, on the other hand, zeroed in on 26 CFR §§ 25.2523(e)–1(f)(3) and (4) (1996), the gift tax regulations which, read together, provide that a trustee's power to allocate the "trustees' commissions . . . and other charges" to the trust's income will not disqualify the trust from the gift tax spousal deduction as long as the donee spouse receives "substantial beneficial enjoyment" of the trust property. 101 T. C. 314, 325 (1993); see also 26 CFR § 20.2056(b)–5(f) (1996) (tracking language of § 25.2523(e)–1(f)). The Commissioner interpreted this language in Revenue Ruling 69–56, and held that a trustee's power to

> "charge to income or principal, executor's or trustee's commissions, legal and accounting fees, custodian fees, and similar administration expenses . . .
>
> .    .    .    .    .
>
> "[does] not result in the disallowance or *diminution of the marital deduction for estate* and gift *tax purposes* unless the execution of such directions would or the exercise of such powers could, cause the spouse to have less than substantially full beneficial enjoyment of the particular interest transferred." Rev. Rul. 69–56, 1969–1 Cum. Bull. 224 (emphasis added).

Both the plurality and JUSTICE SCALIA argue that these gift regulations and rulings are inapposite because they address how the power to allocate expenses affects a trust's *qualification* for the marital deduction, and not how it affects the trust's *value*. Ante, at 103–104; *post,* at 125–126, 131–132. They further contend that the "material limitation" language in 26 CFR § 20.2056(b)–4(a) (1996) would be rendered superfluous if a "material limitation" on the spouse's right to receive income existed only when that spouse lacked "substantial beneficial enjoyment" of the income. 101 T. C.,

at 325–326 (adopting this argument).   Under this reading, there could be no such thing as a trust that qualified for the marital deduction but imposed a material limitation on the right to income because any trust failing the "substantial beneficial enjoyment" test would not qualify for the deduction at all.   *Ante,* at 103; *post,* at 132.   These are potent criticisms.   But no matter how poorly drafted or ill conceived the Revenue Ruling might be, the fact remains that the Commissioner issued it and its plain language is hard to ignore.   In the end, the conclusion one draws regarding how the marital and charitable trusts would be treated if they were *inter vivos* gifts depends on whether one takes the Commissioner at her word: If one does, the gift tax provisions, Revenue Ruling 69–56 in particular, favor respondent's position; if one does not, one is left with no guidance at all.   Neither result is wholly satisfying.

Fortunately, § 20.2056(b)–4(a) further directs the reader to consider a second method of determining the amount of the marital deduction:

> "In determining the value of the interest in property passing to the spouse account must be taken of the effect of any material limitations upon her right to income from the property."

From this we ask whether the executor's right to allocate administrative expenses to the postmortem income of the marital bequest is a material limitation upon the spouse's "right to income from the property," such that "account must be taken of the effect."   Because the executor's power is undeniably a "limitation" on the spouse's right to income, the case hinges on whether that limitation is "material." Accord, *post,* at 128 (SCALIA, J., dissenting) ("The beginning of analysis . . . is to determine what, in the context of § 20.2056(b)–4(a), the word 'material' means").

We can quibble over which definition of "material"—"substantial" or "relevant"—precedes the other in the dictionary,

see *ibid.;* American Heritage Dictionary 772 (2d ed. 1985) ("substantial" precedes "relevant"), but this debate is beside the point. The Commissioner has already interpreted the language in § 20.2056(b)–4(a). In Revenue Ruling 93–48, the Commissioner ruled that the marital deduction is not "ordinarily" reduced when an executor allocates interest payments on deferred federal estate taxes to the postmortem income of the spousal bequest. Rev. Rul. 93–48, 1993–2 Cum. Bull. 271 ("[T]he value of a residuary charitable [or marital] bequest is [not] reduced by the amount of [interest] expenses payable from the income of the residuary property"). JUSTICE SCALIA contends that Revenue Ruling 93–48 should be disregarded because it was promulgated by the Commissioner only after her attempts to prevail on the contrary position in federal court repeatedly failed. *Post,* at 129–130. To be sure, the Commissioner may not have whole-heartedly embraced Revenue Ruling 93–48, but the Ruling nevertheless issued and we may not totally ignore the plain language of a regulation or ruling because the entity promulgating it did not *really* want to have to adopt it. See *Connecticut Nat. Bank* v. *Germain,* 503 U. S. 249, 253–254 (1992) ("We have stated time and time again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there"); *West Virginia Univ. Hospitals, Inc.* v. *Casey,* 499 U. S. 83, 98 (1991) (rejecting argument that "the congressional purpose in enacting [a statute] must prevail over the ordinary meaning of statutory terms").

It is, as an initial matter, difficult to reconcile the Commissioner's treatment of interest under Revenue Ruling 93–48 with her position in this case. For all intents and purposes, interest accruing on estate taxes is functionally indistinguishable from the administrative expenses at issue here. By definition, neither of these expenses can exist prior to the decedent's death; before that time, there is no estate to administer and no estate tax liability to defer. Yet both

types of expenses are inevitable once the estate is open because it is virtually impossible to close an estate in a day so as to avoid the deferral of estate tax payments or the incursion of some administration expenses. Although both can theoretically be avoided if an executor donates his time or pays up front what he estimates the estate tax to be, this will not often occur. Both types of expenses are, moreover, of uncertain amount on the date of death. Because these two types of expenses are so similar in relevant ways, in my view they should be treated the same under § 20.2056(b)–4(a) and Ruling 93–48, despite the Commissioner's limitation on the applicability of Revenue Ruling 93–48 to interest on deferred estate taxes.

But more important, the Commissioner's treatment of interest on deferred estate taxes in Revenue Ruling 93–48 indicates her rejection of the notion that *every* financial burden on a marital bequest's postmortem income is a material limitation warranting a reduction in the marital deduction. That the Ruling purports to apply not only to *income* but also to *principal*, and may therefore deviate from the accepted rule regarding payment of expenses from principal, see *supra*, at 112–113, does not undercut the relevance of the Ruling's implications as to *income*. *Post*, at 130 (SCALIA, J., dissenting). Thus, some financial burdens on the spouse's right to postmortem income will reduce the marital deduction; others will not. The line between the two does not, as JUSTICE SCALIA contends, depend upon the relevance of the limitation on the spouse's right to income to the value of the marital bequest, *post*, at 128–129, since interest on deferred estate taxes surely reduces, and is therefore relevant to, "the value of what passes," *post*, at 128 (emphasis deleted). By virtue of Revenue Ruling 93–48, the Commissioner has instead created a quantitative rule for § 20.2056(b)–4(a). That a limitation affects the marital deduction only upon reaching a certain quantum of substantiality is not a concept alien to the law of taxation; such rules are quite common.

See, *e. g.*, Rev. Rul. 75–298, 1975–2 Cum. Bull. 290 (exempting from income tax the income of qualifying banks owned by foreign governments, as long as their participation in domestic commercial activity is *de minimis*); Rev. Rul. 90–60, 1990–2 Cum. Bull. 3 (establishing *de minimis* rule so that taxpayers who give up less than 33.3% of their partnership interest need not post a bond to enable them to defer payment of credit recapture taxes for low-income housing).

The Commissioner's quantitative materiality rule is consistent with the example set forth in 26 CFR § 20.2056(b)–4(a) (1996):

> "An example of a case in which [the material limitation] rule may be applied is a bequest of property in trust for the benefit of the decedent's spouse but the income from the property from the date of the decedent's death until distribution of the property to the trustee is to be used to pay expenses incurred in the administration of the estate."

Even assuming that JUSTICE SCALIA is correct that the word "may" connotes "possibility rather than permissibility," *post*, at 131, the example still does not specify whether it applies when all the income, some of the income, or any of the income "from the property . . . is to be used to pay expenses incurred in the administration of the estate." Any of these constructions of the example's language is plausible, and the Commissioner's expressed preference for the second one is worthy of deference. *National Muffler Dealers Assn., Inc.* v. *United States*, 440 U. S. 472, 476 (1979).

That said, the proper measure of materiality has yet to be decided by the Commissioner. The Tax Court below compared the actual amount spent on administration expenses to its estimate of the income to be generated by the marital bequest during the spouse's lifetime. 101 T. C., at 325. One *amicus* suggests a comparison of the discounted present value of the projected income stream from the marital be-

quest when the actual administrative expenses are allocated to income with the projected income stream when the expenses are allocated to principal. App. to Brief for American College of Trust and Estate Counsel as *Amicus Curiae* 1–2. The plurality, drawing upon its valuation theory, *supra,* at 115, looks to whether the "date-of-death value of the expected future administration expenses chargeable to income . . . [is] material as compared with the date-of-death value of the expected future income." *Ante,* at 110. None of these tests specifies with any particularity when the threshold of materiality is crossed. Cf. 26 U. S. C. § 2503(b) (setting $10,000 annual minimum before gift tax liability attaches). The proliferation of possible tests only underscores the need for the Commissioner's guidance. In its absence, the Tax Court's approach is as consistent with the Code as any of the others, and provides no basis for reversal.

I share JUSTICE SCALIA's reluctance to find a $1.5 million diminution in postmortem income immaterial under any standard. *Post,* at 128–129. Were this Court considering the question of quantitative materiality in the first instance, I would be hard pressed not to find this amount "material" given the size of Mr. Hubert's estate. But the Tax Court in this case was effectively pre-empted from making such a finding by the Commissioner's litigation strategy. It appears from the record that the Commissioner elected to marshal all her resources behind the proposition that *any* diversion of postmortem income was material, and never presented any evidence or argued that $1.5 million was quantitatively material. See App. 58 (Stipulation of Agreed Issues) (setting forth Commissioner's argument); Brief for Respondent 47. Because she bore the burden of proving materiality (since her challenge to administrative expenses was omitted from the original notice of deficiency), Tax Court Rule 142(a), her failure of proof left the Tax Court with little choice but to reach its carefully crafted conclusion that $1.5 million was not quantitatively material on "the

facts before [it]." 101 T. C., at 325. I would resist the temptation to correct the seemingly counterintuitive result in this case by protecting the Commissioner from her own litigation strategy, especially when she continues to adhere to that strategy and does not, even now, ask us to reconsider the Tax Court's finding on this issue.

This complex case has spawned four separate opinions from this Court. The question presented is simple and its answer should have been equally straightforward. Yet we are confronted with a maze of regulations and rulings that lead at times in opposite directions. There is no reason why this labyrinth should exist, especially when the Commissioner is empowered to promulgate new regulations and make the answer clear. Indeed, nothing prevents the Commissioner from announcing by regulation the very position she advances in this litigation. Until that time, however, the relevant sources point to a test of quantitative materiality, one that is not met by the unusual factual record in this case. I would, accordingly, affirm the judgment of the Tax Court.

JUSTICE SCALIA, with whom JUSTICE BREYER joins, dissenting.

The statute and regulation most applicable to the question presented in this case are discussed in today's opinion almost as an afterthought. Instead of relying on the text of 26 U. S. C. § 2056(b)(4)(B) and its interpretive Treasury Regulation, 26 CFR § 20.2056(b)–4(a) (1996), the plurality hinges its analysis on general principles of valuation which it mistakenly believes to inhere in the estate tax. It thereby creates a tax boondoggle never contemplated by Congress, and announces a test of deductibility virtually impossible for taxpayers and the Internal Revenue Service to apply. In my view, § 2056(b)(4)(B) and § 20.2056(b)–4(a) provide a straightforward disposition, namely, that the marital (and charitable) deductions must be reduced whenever income from property

comprising the residuary bequest to the spouse (or charity) is used to satisfy administration expenses. I therefore respectfully dissent.

I

Section 2056 of the Internal Revenue Code provides for a deduction from gross estate for marital bequests.[1] The Code places two limitations on the marital deduction which are relevant to this case. First, as would be expected, the marital deduction is limited to "an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate." 26 U. S. C. § 2056(a). Thus, as the plurality correctly recognizes, and as both parties agree, if any portion of marital bequest principal is used to pay estate administration expenses, then the marital deduction must be reduced commensurately. Second, and more to the point, "where such interest or property [bequeathed to the spouse] is encumbered in any manner, or where the surviving spouse incurs any obligation imposed by the decedent with respect to the passing of such interest, such encumbrance or obligation shall be taken into account in the same manner as if the amount of a gift to such spouse of such interest were being determined." § 2056(b)(4)(B). Section 2056(b)(4)(B) controls this case and leads to the conclusion that the marital deduction must be reduced when estate income which would otherwise pass to the spouse is used to pay administration expenses of the estate.

A

As the plurality implicitly recognizes, Mrs. Hubert's interest in the estate was burdened with the obligation of paying

---

[1] This case involves both the marital and the charitable deductions. I agree with the plurality's determination that the provisions governing the two should be read *in pari materia, ante,* at 100, and, like the plurality, I focus my attention on the marital deduction.

administration expenses. The settlement agreement resolving the will contest, like Mr. Hubert's most recent will, provided that the estate's administration expenses would be paid from the residuary trusts, with the discretion given to the executor to apportion expenses between the income and principal of the residue. The marital bequest, which makes up some 52% of the residue, was thus plainly burdened with the obligation of paying 52% of the administration expenses of the estate. (The charitable bequest accounted for the remaining 48% of the residue.)

Our task under § 2056(b)(4)(B) is to determine how this obligation would affect the value of the marital bequest were the bequest an *inter vivos* gift. This seemingly rudimentary question proves difficult to answer. Both parties point to various provisions of the Internal Revenue Code and the Treasury Regulations, but these concern the quite different question whether a gift *qualifies* for the gift tax marital deduction; none discusses how the actual payment of administration expenses from income will affect the *value* of the gift tax marital deduction. See, *e. g.*, Treas. Reg. §§ 25.2523(e)–1(f)(3) and (4), 26 CFR §§ 25.2523(e)–1(f)(3) and (4) (1996) (inclusion of the power to a trustee to allocate expenses of a trust between income and corpus will not *disqualify* the gift from the marital deduction so long as the spouse maintains substantial beneficial enjoyment of the income). The plurality seeks to derive some support from § 25.2523(a)–1(e), see *ante*, at 101–102, though it must acknowledge that "[t]he question presented here . . . is not controlled by the exact terms of [that regulation or the provisions to which it refers]," *ante*, at 101. Even going beyond its "exact terms," however, the regulation has no relevance. Like its counterparts in the estate tax provisions, see §§ 20.2031–1(b), 20.2031–7, it simply provides instruction on how to value the *assets* comprising the gift. It says nothing about how to take account of administration expenses. Indeed, the gross estate does not include anticipated adminis-

tration expenses.   As I discuss below, *infra*, at 134–135, the estate tax provisions provide for a deduction from the gross estate for administration expenses actually incurred.   See 26 U. S. C. §2053(a)(2) and 26 CFR §20.2053–3(a) (1996). Were expected administration expenses taken into account in valuing the assets of the gross estate, as the plurality incorrectly suggests, then the estate tax deduction for actual administration expenses would in effect be a second deduction for the same charge.

Respondent's strongest argument is based on Rev. Rul. 69–56, 1969–1 Cum. Bull. 224, which held that inclusion in a marital trust of the power to charge administration expenses to either income or principal does not run afoul of that provision of the regulations which requires, in order for a life-estate trust to *qualify* for the gift and estate tax marital deductions, that the settlor intend the spouse to enjoy "substantially that degree of beneficial enjoyment of the trust property during her life which the principles of the law of trust accord to a person who is unqualifiedly designated as the life beneficiary of a trust."   26 CFR §§2523(e)–1(f)(1), 2056(b)–5(f)(1) (1996).   Although the Revenue Ruling was an interpretation of qualification regulations, it also purported to "h[o]ld" that inclusion of the "power" to allocate expenses between income and principal "does not result in the disallowance *or diminution* of the marital deduction," Rev. Rul. 69–56, 1969–1 Cum. Bull. 224, 225 (emphasis added).   I agree with the Commissioner that this Revenue Ruling is inapposite because it deals with the effect of the mere *existence* of the power to allocate expenses against income; it speaks not at all to the question of how the actual *exercise* of that power will affect the valuation of the estate tax marital deduction.   If the Ruling is construed to mean that *exercise* of the power does not reduce the marital deduction, then actually using principal to pay the expenses should not reduce the marital deduction, a result which everyone agrees is incorrect, see, *e. g., ante,* at 104 (plurality opinion);

*ante*, at 112–113 (O'CONNOR, J., concurring in judgment); *supra*, at 123, and which plainly conflicts with § 2056(a). It seems to me obvious that the Commissioner was simply not addressing the issue before us today when she issued Revenue Ruling 69–56, a conclusion confirmed by the fact that the Commissioner's longstanding view—which antedates Revenue Ruling 69–56—is that use of marital bequest income to pay administration expenses requires that the marital deduction be reduced, see, *e. g.*, Brief for Government Appellee in *Ballantine* v. *Tomlinson*, No. 18,736 (CA5 1961), p. 18; Brief for Government Appellee in *Alston* v. *United States*, No. 21,402 (CA5 1965), p. 15.

B

The Commissioner contends that Treas. Reg. § 20.2056 (b)–4(a), 26 CFR § 2056(b)–4(a) (1996), which interprets § 2056(b)–(4)(B), mandates the conclusion that payment of administration expenses from marital bequest income reduces the marital deduction. Section 20.2056(b)–4(a) provides:

> "The value, for the purpose of the marital deduction, of any deductible interest which passed from the decedent to his surviving spouse is to be determined as of the date of the decedent's death, [unless the executor elects the alternate valuation date]. The marital deduction may be taken only with respect to the net value of any deductible interest which passed from the decedent to his surviving spouse, the same principles being applicable as if the amount of a gift to the spouse were being determined. In determining the value of the interest in property passing to the spouse account must be taken of the effect of any *material* limitations upon her right to income from the property. An example of a case in which this rule may be applied is a bequest of property in trust for the benefit of the decedent's spouse but the income from the property from the date of decedent's death until distribution of the property to the trustee is

to be used to pay expenses incurred in the administration of the estate." (Emphasis added.)

This text was issued pursuant to explicit authority given the Secretary of the Treasury to promulgate the rules and regulations necessary to enforce the Internal Revenue Code. See 26 U. S. C. § 7805(a). As this Court has repeatedly acknowledged, judicial deference to the Secretary's handiwork "helps guarantee that the rules will be written by 'masters of the subject.'" *National Muffler Dealers Assn., Inc.* v. *United States,* 440 U. S. 472, 477 (1979), quoting *United States* v. *Moore,* 95 U. S. 760, 763 (1878). Thus, when a provision of the Internal Revenue Code is ambiguous, as § 2056(b)(4)(B) plainly is, this Court has consistently deferred to the Treasury Department's interpretive regulations so long as they "'"implement the congressional mandate in some reasonable manner."'" *National Muffler Dealers Assn., Inc., supra,* at 476, quoting *United States* v. *Cartwright,* 411 U. S. 546, 550 (1973), in turn quoting *United States* v. *Correll,* 389 U. S. 299, 307 (1967). See also *Cottage Savings Assn.* v. *Commissioner,* 499 U. S. 554, 560–561 (1991).

As the courts below recognized, the crucial term of the regulation for present purposes is "material limitations." Curiously enough, however, neither the Commissioner nor respondent comes forward with a definition of this term, the former simply contending that "it is the burden of paying administration expenses *itself* that constitutes the 'material' limitation," Brief for Petitioner 31, and the latter simply contending that that burden is for various reasons not substantial enough to qualify. Today's plurality opinion also takes the latter approach, never defining the term but displaying by its examples that "material" must mean "relatively substantial." If, it says, a spouse's bequest represents a small portion of the overall estate and could be expected to generate little income, the estate's anticipated administration expenses "'may' be material" when compared to the antici-

pated income. *Ante,* at 106. But, it says, the mere fact that an estate incurs (or as I discuss below, under the plurality's approach, expects to incur) "substantial litigation costs" is insufficient to make a limitation material. *Ante,* at 107.

The beginning of analysis, it seems to me, is to determine what, in the context of § 20.2056(b)–4(a), the word "material" means. In common parlance, the word sometimes bears the meaning evidently assumed by respondent: "substantial," or "serious," or "important." See 1 The New Shorter Oxford English Dictionary 1714 (1993) (def. 3); Webster's New International Dictionary 1514 (2d ed. 1950) (def. 2a). It would surely bear that meaning in a regulation that referred to a "material diminution of the value of the spouse's estate." Relatively small diminutions would not count. But where, as here, the regulation refers to "material limitations upon [the spouse's] right to receive income," it seems to me that the more expansive meaning of "material" is naturally suggested—the meaning that lawyers use when they move that testimony be excluded as "immaterial": Not "insubstantial" or "unimportant," but *"irrelevant"* or *"inconsequential."* See American Heritage Dictionary 1109 (3d ed. 1992) (def. 4: defining "material" as "[b]eing both relevant and consequential," and listing "relevant" as a synonym). In the context of § 20.2056(b)–4(a), which deals, as its first sentence recites, with "[t]he *value,* for the purpose of the marital deduction, of any deductible interest which passed from the decedent to his surviving spouse" (emphasis added), a *"material* limitation" is a limitation that is relevant or consequential *to the value* of what passes. Many limitations are not—for example, a requirement that the spouse not spend the income for five years, or that the spouse be present at the reading of the will, or that the spouse reconcile with an alienated relative.

That this is the more natural reading of the provision is amply demonstrated by the consequences of the alternative reading, which would leave it to the taxpayer, the Commissioner, and ultimately the courts, to guess whether a particu-

lar decrease in value is "material" enough to qualify—without any hint as to what might be a "ballpark" figure, or indeed any hint as to whether there is such a thing as "absolute materiality" (the $2 million at issue here, for instance), or whether it is all relative to the size of the estate. One should not needlessly impute such a confusing meaning to a regulation which readily bears another interpretation that is more precise. Moreover, the Commissioner's interpretation of her own regulation, so long as it is consistent with the text, is entitled to considerable deference, see *National Muffler Dealers Assn., Inc., supra,* at 488–489; *Cottage Savings Assn., supra,* at 560–561.

The concurrence contends that the other (more unnatural) reading of "material" must be adopted—and that no deference is to be accorded the Commissioner's longstanding approach of reducing the marital deduction for *any* payment of administrative expenses out of marital-bequest income— because of a recent Revenue Ruling in which the Commissioner acquiesced in lower court holdings that the marital deduction is not reduced by the payment from the marital bequest of interest on deferred estate taxes. *Ante,* at 118– 120 (discussing Rev. Rul. 93–48). The concurrence asserts that interest accruing on estate taxes "is functionally indistinguishable" from administrative expenses, so that Revenue Ruling 93–48 "created a quantitative rule" shielding some financial burdens from affecting the calculation of the marital deduction. *Ante,* at 118, 119. I think not. The Commissioner issued Revenue Ruling 93–48 only after her contention, that § 20.2056(b)–4(a) required the marital deduction to be reduced by payment of estate tax interest from the marital bequest, was repeatedly rejected by the Tax Court and the Courts of Appeals. See, *e. g., Estate of Street* v. *Commissioner,* 974 F. 2d 723 (CA6 1992); *Estate of Whittle* v. *Commissioner,* 994 F. 2d 379 (CA7 1993); *Estate of Richardson* v. *Commissioner,* 89 T. C. 1193 (1987). Rather than continuing to expend resources in litigation that seemed likely

to bring little or no income to the Treasury, the Commissioner chose, in Revenue Ruling 93–48, to "adopt the result" of then-recent court decisions regarding interest on taxes. It is impossible to think that this suggested her view on the proper treatment of administrative expenses had changed. Indeed, the Ruling itself expressly indicates continued adherence to the Commissioner's longstanding position by reaffirming Revenue Ruling 73–98, which held that the charitable deduction must be reduced by the amount of charitable bequest income and principal consumed to pay administrative expenses, modifying it only insofar as it applies to payment of interest on taxes. Moreover, the Courts of Appeals whose results the Commissioner adopted *themselves distinguished* administrative expenses. In *Estate of Street,* for example, the court reasoned that while administrative expenses accrue at death interest on taxes accrues after death, and noted that the example in Treas. Reg. § 2056(b)–4(a) specifically required a reduction of the marital deduction for payment of administrative expenses, but was silent as to interest on taxes. 974 F. 2d, at 727, 729. While the concurrence may be correct that the distinctions advanced by the Courts of Appeals are not wholly persuasive (the Commissioner herself argued that to no avail), I hardly think they are so irrational that it was arbitrary or capricious for the Commissioner to maintain her longstanding prior position on administrative expenses once Revenue Ruling 93–48 was issued; and it is utterly impossible to think that Revenue Ruling 93–48 was, or was understood to be, an indication that the Commissioner had *changed* her prior position on administrative expenses. That eliminates the only two grounds on which Revenue Ruling 93–48 could be relevant.

The concurrence's reading of Revenue Ruling 93–48 suffers from an additional flaw. Revenue Ruling 93–48 is not limited to payment from marital bequest *income,* but rather extends to payment from marital bequest *principal* as well. Thus, under the concurrence's view of that Ruling, even sub-

stantial administrative expenses paid out of marital bequest principal may not require a reduction of the marital deduction. This result is, of course, inconsistent with the statute, see 26 U. S. C. § 2056(a), and with what appears to be (as I noted earlier, *supra*, at 125–126) the concurrence's view, *ante*, at 112–113.

Respondent asserts that some inquiry into "substantiality" is necessarily implied by the fact that the last sentence of the regulation describes an income-to-pay-administration-expenses limitation as "[a]n example of a case in which this rule [of taking account of material limitations] *may* be applied," 26 CFR § 20.2056(b)–4(a) (1996) (emphasis added). The word "may" implies, the argument goes, that in some circumstances under those same facts the rule would *not* be applied—namely (the argument posits), when the administration expenses are not "substantial." But the latter is not the only explanation for the "may." Assuming it connotes possibility rather than permissibility (as in, "My boss said that I may go to New York"), the contingency referred to could simply be the contingency that there be some income which is used to pay administration expenses.

The Tax Court (in analysis adopted verbatim by the Eleventh Circuit and seemingly adopted by the concurrence, *ante*, at 120–121) took yet a third approach to "material limitation," which I must pause to consider. The Tax Court relied on 26 CFR § 25.2523(e)–1(f)(3) (1996), which, it stated, provides that so long as the spouse has substantial beneficial enjoyment of the income of a trust, the bequest will not be disqualified from the marital gift deduction by virtue of a provision allowing the trustee to allocate expenses to income, and the spouse will be deemed to have received all the income from the trust. The Tax Court concluded: "If Mrs. Hubert is treated as having received all of the income from the trust, there can be no material limitation on her right to receive income." 101 T. C. 314, 325–326 (1993). This reasoning fails for a number of reasons. First, § 25.2523(e)–

1(f)(3) is a *qualification* provision; it does not purport to instruct on how to value the bequest. Second, and more fundamentally, the Tax Court's approach renders the "material limitation" phrase in § 20.2056(b)–4(a) superfluous. Under that view, a limitation is material only if it deprives the spouse of substantial beneficial enjoyment of the income. However, if the spouse does not have substantial beneficial enjoyment of the income, the trust does not qualify for the marital deduction and whether the limitation is material is irrelevant. That "material limitation" is not synonymous with "substantial beneficial enjoyment" is further suggested by the regulations governing the qualification of trusts for the marital estate tax deduction, which are virtually identical to the gift tax provisions relied upon by the Tax Court. See 26 CFR § 20.2056(b)–5(f) (1996). Section 20.2056(b)–5(f)(9) provides that a spouse will not be deemed to lack substantial beneficial enjoyment of the income merely because the spouse is not entitled to the income from the estate assets for the period reasonably required for administration of the estate. However, that section expressly provides: "As to the *valuation* of the property interest passing to the spouse in trust where the right to income is expressly postponed, see *§ 20.2056(b)–4.*" *Ibid.* (emphasis added).

## C

My understanding of § 20.2056(b)–4(a) is the only approach consistent with the statutory requirement that the marital deduction be limited to the value of property which passes to the spouse. See 26 U. S. C. § 2056(a). As the plurality and the concurrence acknowledge, one component of an asset's value is its discounted future income. See, *e. g.,* *Maass* v. *Higgins,* 312 U. S. 443, 448 (1941); 26 CFR § 20.2031–1(b) (1996). (This explains why postmortem income earned by the estate is not added to the date-of-death value in computing the gross estate: projected income was already included in the date-of-death value.) The plurality

and the concurrence also properly acknowledge that if residuary principal is used to pay administration expenses, then the marital deduction must be reduced commensurately because the property does not pass to the spouse. See *ante*, at 104 (plurality opinion); *ante*, at 112–113 (O'CONNOR, J., concurring in judgment); 26 U. S. C. § 2056(a). The plurality and the concurrence decline, however, to follow this reasoning to its logical conclusion. Since the future stream of income is one part of the value of the assets at the date of death, use of the income to pay administration expenses (which were not included in calculating the assets' values) in effect reduces the value of the interest that passes to the spouse. As succinctly explained by a respected tax commentator:

> "Beneficiaries are compensated for the delay in receiving possession by giving them the right to the income that is earned during administration. . . . [I]t is only the combination of the two rights—that to the income and that to possess the property in the future—that gives the beneficiary rights at death that are equal to value of the property at death. If the beneficiary does not get the income, what the beneficiary gets is less than the deathtime value of the property." Davenport, A *Street Through Hubert*'s Fog, 73 Tax Notes 1107, 1110 (1996).

If the beneficiary does not receive the income generated by the marital bequest principal, she in effect receives at the date of death less than the value of the property in the estate, in much the same way as she receives less than the value of the property in the estate when principal is used to pay expenses.

## II

Besides giving the word "material" the erroneous meaning of something in excess of "substantial," the plurality's opinion adopts a unique methodology for determining materiality. Consistent with its apparent view that the estate tax provisions prohibit examination of any events following the

date of death, the plurality concludes that whether a limitation is material, and the extent of any reduction in the marital deduction, are determined solely on the basis of the information available at the date of death—a position espoused by neither litigant, none of the *amici*, and none of the courts to have considered this issue since it arose some 35 years ago. The plurality appears to have been misled by its view that the estate tax demands symmetry: Since only anticipated income is included in the gross estate, only anticipated administration expenses can reduce the marital deduction. See *ante*, at 102, 106–109. The provisions of the estate tax clearly reject such a notion of symmetry and do not sharply discriminate between date-of-death and postmortem events insofar as the allowance of deductions for claims against and obligations of the estate are concerned. In this very case, for example, in calculating the taxable estate the executors deducted $506,989 of actual administration expenses pursuant to 26 U. S. C. § 2053(a)(2). App. to Pet. for Cert. 3a. The regulations governing such deductions provide that "[t]he amounts deductible . . . as 'administration expenses' . . . are limited to such expenses as are *actually and necessarily*, incurred in the administration of the decedent's estate," 26 CFR § 20.2053–3(a) (1996) (emphasis added), and expressly prohibit taking a deduction "upon the basis of a vague or uncertain estimate," § 20.2053–1(b)(3). Since such common administration expenses as litigation costs will be impossible to ascertain with any exactitude as of the date of death, the plurality's approach flatly contradicts the provisions of these regulations.[2]

The marital deduction itself is calculated on the basis of actual, rather than anticipated, expenditures from the marital bequest. The regulations governing 26 U. S. C. § 2056(b)

---

[2] The plurality's reference to *Ithaca Trust Co.* v. *United States*, 279 U. S. 151 (1929), is unhelpful. That case holds that date-of-death valuation is applicable to bequeathed assets, not that it is applicable to claims and obligations that are to be satisfied out of those assets.

(4)(A), the provision requiring the marital deduction to be reduced to take account of the effect of estate and inheritance taxes, make it clear that the *actual* amounts of those taxes control. See 26 CFR § 20.2056(b)–4(c) (1996). (With respect to the charitable deduction, the requirement that actual amounts be used is apparent on the face of the statute itself, see 26 U. S. C. § 2055(c).) Moreover, the language of § 2056(b)(4)(A) is quite similar to the language of the regulation at issue here, § 20.2056(b)–4(a), suggesting that the latter, like the former, should be interpreted to require consideration of *actual,* rather than merely expected, administration expenses. Compare 26 U. S. C. § 2056(b)(4)(A) ("[T]here shall be taken into account the *effect* which the tax imposed by section 2001, or any estate [tax], has on the *net* value to the surviving spouse of such interest" (emphasis added)) with 26 CFR § 20.2056(b)–4(a) (1996) ("The marital deduction may be taken only with respect to the *net* value of any deductible interest which passed from the decedent to his surviving spouse . . . . In determining the value of the interest in property passing to the spouse account must be taken of *the effect of* any material limitations upon [the spouse's] right to income" (emphasis added)).

In short, the plurality's general theory concerning valuation is contradicted by provisions of both the Code and regulations. It is also plagued by a number of practical problems. Most prominently, the plurality's rule is simply unadministrable. It requires the Internal Revenue Service and courts to engage in a peculiar, *nunc pro tunc,* three-stage investigation into what would have been believed on the date of death of the decedent. This highly speculative inquiry begins, I presume, with an examination of the various possible administration expenditures multiplied by the likelihood that they would actually come into being (for example, estimating the chances that a will contest would develop). Next, one must calculate the expected future income from the bequest. Finally, one must determine if,

in light of the expected income, the anticipated expenses are such that a willing buyer would deem them to be a "material [*i. e.*, substantial] limitation" on the right to receive income.

Just how a court, presiding over a tax controversy many years after the decedent's death, is supposed to blind itself to later developed facts, and gauge the expected administration expenses and anticipated income just as they would have been gauged on the date of death, is a mystery to me. In most cases, it is nearly impossible to estimate administration expenses as of the date of death; much less is it feasible to reconstruct such an estimation five or six years later. The plurality's test creates tremendous uncertainty and will undoubtedly produce extensive litigation. We should be very reluctant to attribute to the Code or the Secretary's regulations the intention to require this sort of inherently difficult inquiry, especially when the key regulation is best read to require that account be taken of *actual* expenses.

The plurality's test also leads to rather peculiar results. One example should suffice: Assume a decedent leaves his entire $30 million estate in trust to his wife and that as of the date of death a hypothetical buyer estimates that the estate will generate administration expenses on the order of $5 million because the decedent's estranged son has publicly stated that he is going to wage a fight over the will. Further, assume that the will provides that either income or principal may be used to satisfy the estate's expenses. Finally, assume that a week after the decedent's death, mother and son put aside their differences and that the money passes to the spouse almost immediately with virtually no administration expenses. Under the plurality's test, since "only anticipated administration expenses payable from income, not the actual ones, affect the date-of-death value of the marital or charitable bequests," *ante*, at 108, the marital deduction will be limited to approximately $25 million, and, despite generating almost no income and having very few adminis-

tration expenses, the estate will be required to pay an estate tax on some $5 million even though the entire estate passed to the spouse. The plurality's test creates taxable estates where none exist. The proper result under § 2056(b)(4)(B) and § 20.2056(b)–4(a) is that the marital deduction is $30 million and the estate pays no estate tax.

I have one final concern with the plurality's approach: It effectively permits an estate to obtain a double deduction from tax for administration expenses, a tax windfall which Congress could never have intended. Title 26 U. S. C. § 642(g) provides that administration expenses, which are allowed as a deduction in computing the taxable estate of a decedent, see § 2053, may be deducted from income (provided they fall within an income tax deduction) if the estate files a statement with the Commissioner stating that such amounts have not been taken as deductions from the gross estate. Here, respondent elected to deduct some $1.5 million of its administration expenses on its fiduciary income tax returns and was prohibited from taking these expenses as a deduction from the gross estate. Notwithstanding § 642(g), however, the plurality's holding effectively permits respondent to deduct the $1.5 million of administration expenses on the estate tax return under the guise of a marital or charitable deduction. Of course, the estate could have avoided the estate tax by electing to deduct its administration expenses on its estate tax return, but then it would have had no income tax deduction; Congress gave estates a choice, not a road map to a double deduction. I recognize that nothing in § 642(g) *compels* the conclusion that the marital (or charitable) deduction must be reduced whenever an estate elects to deduct expenses from income. However, by enacting § 642 to prohibit a double deduction, Congress seemingly anticipated that if an estate elected to deduct administration expenses against income, its potential estate tax liability would increase commensurately. The plurality's holding today defeats this expectation.

## III

The plurality today virtually ignores the controlling authority and instead decides this case based on a novel vision of the estate tax system. Because 26 CFR § 20.2056(b)–4(a) (1996), which is a reasonable interpretation of 26 U. S. C. § 2056(b)(4)(B), squarely controls this case and requires that the marital (and charitable) deductions be reduced whenever marital (or charitable) bequest income is used to pay administration expenses, I would reverse the judgment of the Eleventh Circuit. There is some dispute as to how exactly to calculate the reduction in the marital and charitable deductions. The dissenting judges in the Tax Court, on the one hand, contended that the marital and charitable deductions should be reduced by the date-of-death value of an annuity charged against the residuary interest that would be sufficient to pay the actual administration expenses charged to income. See 101 T. C., at 348–349 (Beghe, J., dissenting). The Commissioner, on the other hand, contends that the marital and charitable deductions must be reduced on a dollar-for-dollar basis, reasoning that this is the same way that all claims and obligations of the estate are treated. Since this dispute was not adequately briefed by the parties, nor passed upon by the Eleventh Circuit or the majority of judges in the Tax Court, I would remand the case to allow the lower courts to consider this issue in the first instance.

JUSTICE BREYER, dissenting.

I join JUSTICE SCALIA's dissent. This case turns on whether a payment of administration expenses out of income generated by estate assets constitutes a "material limitation" on the right to receive income from those assets. 26 CFR § 20.2056(b)–4(a) (1996). The Commissioner has long, and consistently, argued that such a payment does reduce the value of the marital deduction. See, e. g., Ballantine v. Tomlinson, 293 F. 2d 311 (CA5 1961); Alston v. United States, 349 F. 2d 87 (CA5 1965); Estate of Street v. Commis-

*sioner,* 974 F. 2d 723 (CA6 1992); *Estate of Roney,* 33 T. C. 801 (1960), aff'd *per curiam,* 294 F. 2d 774 (CA5 1961); Reply Brief for Petitioner 15. JUSTICE SCALIA explains why the Commissioner's interpretation is consistent with the regulation's language and the statute it interprets. I add a brief explanation as to why I believe that it is consistent with basic statutory and regulatory tax law objectives as well.

The regulation, which speaks of the "net value" of what passes to the spouse, requires a realistic valuation of the interest left to the spouse as of the date of the decedent's death. Assume, for example, that a decedent leaves his entire estate to his wife in trust, with the proviso that the administrator pay 25% of the income earned by the estate assets during the period of administration to the decedent's son. Assume that the period of administration lasts several years and that the estate generates several million dollars in income during that time. On these assumptions, the son will have received an important asset (included in the estate's date-of-death value) that the surviving spouse did not receive, namely, the right to a portion of the estate's income over a period of several years. Were estate tax law to fail to take account of this fact (that the son, not the wife, received that asset), it would permit a valuable asset (the right to that income) to pass to the son without estate tax. But estate tax law does seem realistically to appraise the "net value" of what passes to the wife in such circumstances. See 26 CFR §§ 20.2056(b)–5(f)(9), 20.2056(b)–4(a) (1996); 4 A. Casner, Estate Planning § 13.11, pp. 138–139, and § 13.14.6, n. 18 (5th ed. 1988); cf. *Estate of Friedberg,* 63 TCM 3080 (1992), ¶ 92,310 P–H Memo TC (delay in payment of a specific bequest to a surviving spouse reduces its marital deduction value). And that being so, why would it not take account of the similar limitation on the right to income at issue here? The fact that the administrator uses estate income to pay administration expenses, rather than to make a bequest to the son, makes no difference from a marital deduction

perspective, for, as the regulations state, the marital deduction focuses upon the "net value" of the "interest which passed from the decedent to his surviving spouse." 26 CFR § 20.2056(b)–4(a) (1996); see *United States* v. *Stapf,* 375 U. S. 118, 125 (1963).

The Commissioner's position also treats economic equals as equal. The time when the administrator writes the relevant checks, and not the account to which he debits them, determines economic impact. Thus $100,000 in administration expenses incurred by a $1 million estate open for one year, paid by check on the year's last day will (assuming 10% simple interest and assuming away here-irrelevant complexities) leave $1 million for the spouse at year's end, whether the administrator pays the expenses out of estate principal or from income. On these same assumptions, a commitment to pay, say, $100,000 in administration expenses out of income will reduce the value of principal by an amount identical to the reduction in value that would flow from a commitment to pay a similar amount out of principal. This economic similarity argues for similar estate tax treatment.

I recognize that the statute permits estates to deduct administration and certain other expenses either from the estate tax or from the estate's income tax. 26 U. S. C. § 642(g); cf. *ante,* at 112–113 (O'CONNOR, J., concurring in judgment). But I do not read that statute as allowing a spouse to escape payment both of the estate tax (through a greater marital deduction) and also of income tax (through the deduction of the administration expenses from income). One can easily read the provision's language as simply granting the estate the advantage of whichever of the two tax rates is the more favorable, while continuing to require the estate to pay at least one of the two potential taxes. To read the "election" provision in this way makes of it a less dramatic departure from a Tax Code that otherwise sees what passes to heirs not as the full value of what the testator left, but, rather, as

that value minus a set of permitted deductions. 26 U. S. C. § 2053(a) (specifying deductions).

Although respondent argues that the Commissioner's interpretation will sometimes produce an unjustified "shrinking" of the marital deduction, I do not see how that is so. I concede that unfairness could occur were the Commissioner to readjust the marital deduction *every time* the administrator deducted from the estate's income tax *every* expense necessary to produce that income. But regulations guard against her doing so. Those regulations distinguish between (a) "expenditures . . . essential to the proper settlement of the estate," and (b) expenses "incurred for the individual benefit of the heirs, legatees, or devisees." 26 CFR § 20.2053–3(a) (1996). The former are "administration expenses"; the latter are not. Deducting expenses in the latter category from the estate's income tax should not affect the marital deduction; and, as long as that is so, the Commissioner's interpretation will simply permit estates to use their administration expense deductions to the best tax advantage. It will not lead to a marital deduction that to the spouse's overall disadvantage somehow shrinks, or disappears.

The Commissioner's insistence upon reducing the date-of-death value of the trust dollar for dollar poses a more serious problem. Payment of $100,000 in administration expenses from future income should reduce the date-of-death value of assets left to a wife in trust not by $100,000, but by $100,000 discounted to reflect the fact that the $100,000 will be paid in the future, earning interest in the meantime. (Assuming a 10% interest rate and payment one year after death, the reduction in value would be about $91,000, not $100,000.) Nonetheless, the Commissioner's practice of reducing the marital deduction dollar for dollar might reflect the simplifying assumption that discount calculations do not make a sufficiently large difference sufficiently often to warrant the administrative burden of authorizing them. Or it might reflect

the fact that when administration expenses are taken as a deduction against the estate tax, their value is not discounted. Were the Commissioner to defend the dollar-for-dollar position in some such way, her approach might prove reasonable. And this Court will defer to longstanding interpretations of the Code and Treasury Regulations, see *supra*, at 138–139, that reasonably "implement the congressional mandate." *United States* v. *Correll*, 389 U. S. 299, 307 (1967); see *National Muffler Dealers Assn., Inc.* v. *United States*, 440 U. S. 472, 488 (1979). Regardless, I would not decide this matter now, for it has not been argued to us.

Finally, although I agree with much that JUSTICE O'CONNOR has written, I cannot agree that the amount at issue—almost $1.5 million of administration expenses deducted from income—is insignificant hence immaterial; and I can find no concession to that effect in the courts below.

For these reasons and those set forth by JUSTICE SCALIA, I would reverse the Court of Appeals.