**ESTATE OF Stanley M. CARPENTER, Deceased; William R. Thomas, Administrator, Petitioners–Appellants,**

v.

**COMMISSIONER OF THE INTERNAL REVENUE SERVICE, Respondent–Appellee.**

No. 94–2176.

United States Court of Appeals, Fourth Circuit.

Argued March 9, 1995.

Decided May 9, 1995.

**ARGUED:** Addison Vann Irvin, Brown & Bunch, Chapel Hill, NC, for appellants. David Alan Shuster, Tax Div., U.S. Dept. of Justice, Washington, DC, for appellee. **ON BRIEF:** Loretta C. Argrett, Asst. Atty. Gen., Gary R. Allen, David I. Pincus, Tax Div., U.S. Dept. of Justice, Washington, DC, for appellee.

Before WIDENER, MICHAEL and MOTZ, Circuit Judges.

Affirmed by published opinion. Judge MOTZ wrote the opinion, in which Judge WIDENER and Judge MICHAEL joined.

## OPINION

MOTZ, Circuit Judge:

This appeal involves the widowed beneficiary of a trust created pursuant to her husband's will, who accepted certain funds as part of a settlement agreement after a dispute arose over the terms of the trust. The tax court found that because the widow's interest under the trust was a life estate unaccompanied by a general power of appointment, the decedent's estate was not entitled to a marital deduction for funds paid to the widow as part of the settlement. We affirm.

## I.

Stanley M. Carpenter, a resident of North Carolina, died on October 2, 1987. He was survived by his wife, Ernestine Carpenter, who was 63 years old at his death, and his daughter by a previous marriage, Nancy Carpenter Reid, who was 50 at his death. Ernestine's son from a prior marriage, William R. Thomas, was subsequently appointed as the administrator of Stanley's estate. Several years prior to his death, on May 5, 1981, Stanley executed a holographic will. He also executed a codicil to his will on December 17, 1986. The validity of these documents is uncontested.

Under the terms of the will, Stanley left to his daughter, Nancy, $50,000 in cash and three parcels of real property. Stanley Carpenter devised to Ernestine his "personal cars, trucks, tractors, mowers, farm equipment, guns and everything I own at the farm." The will further provided that certain real property from the estate was to be placed in trust for the benefit of Ernestine as follows:

### 3.

I hereby wish to have all my real estate including my farm,[1] a lot in Beaufort, land in Orange, Durham and Granville Counties to be put in Trust for my wife Ernestine.

My wife is to select the Trust Dept. She is also to take an equal part as an executor with the Trust in all decisions regarding this trust [sic].

This Trust is to work with my wife + to give her all money necessary to give her a good life and happiness.

I chose to use a Trust so that no one can dominate or take advantage of her for her entire life.

I want the Trust together with my wife to sell the land in Granville County and Orange County after 5 years of my death and not later than 10 years to the highest bidder or to work with a developer to obtain the best returns.

I love my wife dearly and she has given me the happiest years of my life and I am concerned that people may try to influence her if she should be depressed or ill.

The Trust working with my wife may sell any property at anytime if necessary for cash for the Trust in case my wife wants cash for her personal health, needs, trips or anything relating to my wife.

My wife may live at the farm for her life if she chooses and the Trust is to keep up and pay all expenses neccary [sic] including Taxes, insurance, etc. I hope she will eventually leave the farm and enjoy life while she lives and not try to save money to be left behind.

I have worked hard all my life and deprived myself of trips, clothes, new tractor, etc. in order that she could have a good life and I don't want her to to [sic] deprive herself of anything in order to save for some one [sic] else after the hard life I have had trying to prevent my relatives from stealing my share of income from Carpenter's, Inc., a firm of which I was one of the original incorporators and helped to build up.

As stated this Trust is to protect my wife only. I hope she will use it wisely for her happiness.

### 4.

If my wife should decide to move from the farm and same is sold to the highest bidder, the proceeds are to go into the Trust Fund and after 2 years ½ (one half) of proceeds from the sale are to be given to my wife personally.

### 5.

If the Trust cannot accept the terms of this will, my wife is to select another company or my wife may change from one Trust to another.

The trust created by Stanley Carpenter's will further provided that any remaining trust assets upon Ernestine Carpenter's death should be transferred to Nancy Reid:

Since I am leaving practically all of my life's assets for my wife's benefit while she lives, I think and want anything left in the Trust to go to my daughter Nancy.

Since my wife has valuable stocks and accounts of her own that she has accumulated in her life, I feel no obligation to leave anything to my wife's son, who lives good and better than I ever had a chance to do at his age.

\* \* \* \* \* \*

Only my wife and daughter are to benefit from my life's work.

The will contained no residuary clause and, as a result, Stanley died intestate with respect to his remaining assets unidentified in the will.

As administrator of Stanley Carpenter's estate, William Thomas retained legal counsel on behalf of the Estate. Upon examining the will, the Estate's counsel became concerned that a possible conflict might arise between Ernestine Carpenter and Nancy Reid concerning their respective rights under the will. Counsel submitted copies of the will to two North Carolina banks in the hope

---

**1.** Stanley Carpenter executed a subsequent codicil that amended this provision by removing the farm from the trust and devising it in fee to Ernestine Carpenter. The codicil did not affect any other provision in the will.

that one of them would be able to serve as trustee according to the will's terms. Neither bank was willing to act as trustee unless the rights of Ernestine Carpenter and Nancy Reid under the will were clarified—either through a settlement agreement between the two or through a declaratory judgment action.

On January 25, 1988, the Estate's counsel wrote a letter advising Ernestine and Nancy of the potential conflict and the banks' refusal to act as trustee under the existing terms of the trust. He further opined that:

Conceivably, Mrs. Carpenter could use the entire principal of the trust for her personal uses. Therefore, it would appear that the percentage of the trust assets which should go to Mrs. Carpenter outright would be somewhere between 70% and 100% of the total trust assets in order to correspond to her interest in the trust set up by Mr. Carpenter.

If the trust is left in place, Mrs. Carpenter will be able to draw freely upon all the assets in the trust for her needs without limitation. She will not, however, be able to give or devise any of that property to anyone else.

Mrs. Reid will be entitled to whatever remains of the trust at Mrs. Carpenter's death, subject to her right to withdraw. The amount that Mrs. Reid would eventually receive would, of course, depend entirely on how much longer Mrs. Carpenter lives and how much she elects to spend. Also, if the trust is set up, I understand that there will be the normal administrative costs, plus extra hourly charges that will be necessary because so much of the trust property is real estate.

If the trust is not set up and the assets are distributed outright, Mrs. Carpenter will take only a portion of the trust assets rather than have access to all of the trust assets for the rest of her life. Mrs. Reid would receive a portion of the trust assets outright now. The amount of this portion may be less or more than what Mrs. Reid would eventually receive upon Mrs. Car-

penter's death. Some costs, of course, would be necessary to settle the matter in this manner, but a much larger amount of ongoing administrative costs for the trust would be saved.

Nancy Reid, whose husband is an attorney, did not accept the Estate counsel's assessment that Ernestine Carpenter's share was equal to between "70% and 100% of the total trust assets." Apparently after some negotiation, on May 20, 1988, Ernestine and Nancy executed a Family Settlement Agreement, which was thereafter filed in, and approved by, the General Court of Justice, Superior Court Division, Durham County, North Carolina. Pursuant to the agreement, Ernestine and Nancy waived their respective rights under the terms of the trust. Instead, they agreed that all of the property designated in the will as trust assets, and all remaining property not mentioned in the will, should be divided equally between the two of them as tenants in common. In order to demonstrate that a good faith dispute had arisen as to the proper interpretation of Stanley Carpenter's testamentary trust, the agreement provided:

AND WHEREAS, said holographic will is vague and indefinite and a Declaratory Judgment action would be necessary to interpret said will in order to clarify the status of legal title to much of the property of said estate at great expense to the estate, and a genuine dispute has arisen between the Wife and Daughter as to the true intent of Stanley Manning Carpenter with respect to the selection of a trustee or trustees as set forth in Item 3 of said Last Will and Testament and with respect to the property to be left in trust, to wit: whether the Wife may sell the property comprising the corpus of the proposed trust for her support without reference to a standard of support, or whether said property may be sold for payment of the Wife's necessities of life only.

On November 25, 1988, William Thomas filed the federal estate tax return in his capacity as administrator. The return included a claim that the estate was entitled to a marital deduction[2] in the amount of $464,795, the

---

**2.** The marital deduction allows property to pass from the decedent to the surviving spouse without estate tax liability. The property is instead taxed at the time of the surviving spouse's death.

purported value of Ernestine Carpenter's share of the property divided between Ernestine Carpenter and Nancy Reid pursuant to the terms of the Family Settlement Agreement. The Commissioner of the Internal Revenue Service disallowed $422,464.50 of the marital deduction taken with respect to the settlement agreement "because it ha[d] not been established that the property" that passed "to the surviving spouse under [the] family settlement agreement, was not terminable interest property under the provisions of section 2056 of the Internal Revenue Code."

The Estate challenged the Commissioner's findings in the United States Tax Court. The tax court upheld the Commissioner's denial of the marital deduction. The court reasoned that property transferred to a surviving spouse under a settlement agreement does not qualify for a marital deduction unless the settlement agreement reflects the surviving spouse's enforceable rights, under applicable state law, to either a fee simple interest or a life estate with a general power of appointment. Analyzing the will under North Carolina law, the tax court concluded that the property that Ernestine received under the settlement agreement did not reflect her rights to either of these interests.

## II.

The Estate's initial argument is that Ernestine's "rights under the testamentary trust were not terminable interests." The Estate concedes that generally a "marital deduction is not allowed for a terminable interest" and that a "life estate is a terminable interest." *See* 26 U.S.C. § 2056(b)(1); 26 C.F.R. § 20.2056(b)–1(b). Furthermore, it acknowledges that the language of the governing instrument—here the will—and the law of the state of the decedent's domicile—here North Carolina—determine the nature of an interest and how it should be taxed. *See Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967); *Morgan v. Commissioner of Internal Revenue,*

*Wisely v. United States,* 893 F.2d 660, 663 (4th Cir.1990).

309 U.S. 78, 80–81, 60 S.Ct. 424, 425–26, 84 L.Ed. 585 (1940). *See also* 26 C.F.R. § 20.2056(b)–5(e).

Stanley Carpenter's will clearly provides that Ernestine is to receive a life interest in the trust assets. For example, the will contains such phrases as: "I chose to use a Trust so that no one can dominate or take advantage of [Ernestine Carpenter] for her entire *life;* " "[m]y wife may live on the farm for her *life;* " and "I am leaving practically all of my life's assets for my wife's benefit while she *lives.*" (Emphasis added.) Moreover, Stanley Carpenter's intent to convey to Ernestine an interest for her life is further supported by the fact that he created a remainder interest in favor of his daughter with respect to the trust assets: "I think and want anything left in the Trust to go to my daughter Nancy." The North Carolina courts have held that similar testamentary language evidences an intent to convey a life estate. *See, e.g., Adcock v. Perry,* 305 N.C. 625, 290 S.E.2d 608, 611 (1982). Thus, it seems clear that Ernestine's interest under the testamentary trust was a life estate, a concededly terminable interest.

The Estate does not claim to the contrary, nor does it claim that Ernestine was given the power to "turn her interest into a fee simple interest." Rather, it claims that in addition to the life estate, Ernestine also received "a general power of appointment." The Internal Revenue Code provides a life estate accompanied by such a power can qualify for a marital deduction. *See* 26 U.S.C. § 2056(b)(5). The general power of appointment must, however, include five features. *Id.;* 26 C.F.R. § 20.2056(b)–5. Among these are the requirements that:

> (3) The surviving spouse must have the power to appoint the entire interest to either herself or to her estate; [and] (4) The power in the surviving spouse *must be exercisable by her alone* and (whether exercisable by will or during her life) *must be exercisable in all events* [.]

26 C.F.R. § 20.2056(b)–5(a)(3) and (4) (emphasis added).[3]

---

**3.** The statute contains both of these requirements, albeit in different language:

The Estate asserts that the "only factor that would seem to be in question in this case is whether Mrs. Carpenter had the power to appoint the entire interest to either herself or her estate" *i.e.,* the sole issue is whether the power given to Ernestine Carpenter complies with the requirement set forth in 26 C.F.R. § 20.2056(b)–5(a)(3). The Estate then devotes its attention to attempting to demonstrate that in order to qualify for the marital deduction, the only power that Ernestine needed to have been given was the power to appoint her entire interest to herself, so that the fact that she admittedly was not given the power to appoint her interest to her estate was not fatal to her claim. It is true that in order to qualify for a marital deduction, a widow need not be given a life estate with the power to appoint to her estate, provided that she is given the power to appoint to herself. *See* 26 U.S.C. § 2056(b)(5); 26 C.F.R. § 20.2056(b)–5(a)(3). However, that power must also be "exercisable by her [the widow] alone and in all events." *See* 26 U.S.C. § 2056(b)(5); 26 C.F.R. § 20.2056(b)–5(a)(4). Thus, we must examine North Carolina law to determine if the power given to Ernestine under the will permitted her (1) to appoint her entire interest to herself *and* (2) to exercise this right alone and in all events.

The Estate relies on four North Carolina cases in support of its position that the powers given Ernestine were sufficient to qualify her life estate for a marital deduction. *See Worsley v. Worsley,* 260 N.C. 259, 132 S.E.2d 579 (1963); *Keener v. Korn,* 46 N.C.App. 214, 264 S.E.2d 829, *review denied,* 301 N.C. 92 (1980); *Hill v. Hill,* 19 N.C.App. 42, 197 S.E.2d 886 (1973); *Howell v. Alexander,* 3 N.C.App. 371, 165 S.E.2d 256 (1969). That reliance is misplaced.

In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest ... with *power in the surviving spouse to appoint the entire interest ... (exercisable in favor of such surviving spouse, or the estate of such surviving spouse,* or in favor of either, whether or not in each case the power is exercisable in favor of others), ... [the interest will qualify for a marital deduction] only if such power ..., *whether exercisable by will or during life, is exercisable by such spouse alone and in all events.*

The crucial issue in each of these cases was whether the nominal life tenant had been given broad enough powers of disposition so that her life estate was really a fee simple interest, or could be converted into a fee simple interest. In two cases, the courts held it was not broad enough. *See Worsley,* 132 S.E.2d at 582; *Howell,* 165 S.E.2d at 262. In the remaining two, the courts held it was broad enough. *See Keener,* 264 S.E.2d at 832; *Hill,* 197 S.E.2d at 888–89. This determination is simply not an issue in the case at hand. Here, the Estate concedes that Ernestine *was not given a fee simple or powers sufficient to convert her life estate into a fee simple interest, i.e.,* to convey it to a grantee who "takes an indefeasible fee." *Keener,* 264 S.E.2d at 832.

Furthermore, and perhaps more significantly, not one of these cases upon which the Estate so heavily relies involves a life estate held in trust, let alone one held in a trust administered by a neutral co-trustee. Thus, the fact that Ernestine's interest was in a trust to be administered by an institutional co-trustee is not even addressed by the Estate's argument. Yet this obviously constitutes an important limitation on powers given to Ernestine by the will. There is, moreover, a North Carolina case that deals with the rights of a life tenant whose interest was held in trust, which, although heavily relied on by the tax court, is not cited in either of the Estate's appellate briefs. *See Campbell v. Jordan,* 274 N.C. 233, 162 S.E.2d 545 (1968).

In *Campbell,* the court construed a trust in which the trustees were empowered to convey a portion of the trust assets to a life tenant in *fee simple*—free of the trust—if the

26 U.S.C. § 2056(b)(5) (emphasis added). Notwithstanding the Estate's arguments, the statute, like the regulations, requires that in order to qualify for the marital deduction, the power of appointment accompanying a life estate must permit a spouse to appoint to her *estate.* Nor did the tax court hold to the contrary. Rather it held that "the will did not expressly or impliedly, give the wife, alone and in all events, the power to appoint the trust assets, or any portion thereof, to herself free of the trust, *or* to her estate."

trustees deemed it "necessary or best for the welfare of the [beneficiaries], and consistent with the welfare of [the testator's] family and estate...." 162 S.E.2d at 547. A life tenant brought suit asserting the trustees had a mandatory duty to terminate the trust and convey the trust assets to her in fee simple. The Supreme Court of North Carolina categorically rejected this contention, reasoning:

> We think it abundantly clear that *testator did not intend to give his trustee the unbridled discretion to divide his estate in contravention of his testamentary plan* or to invade the corpus in behalf of any beneficiary except in case of necessity or circumstances clearly denoting that such invasion was best for the beneficiary's personal welfare. The beneficiary's necessity or welfare does not include the personal satisfaction she might derive from owning the property in fee and being able to devise it to persons of her choice.

*Id.* at 551 (emphasis added).

Although in this case Ernestine herself is a co-trustee and the trustees are given broader rights to invade the corpus, *i.e.,* for Ernestine's "happiness ... personal health, needs, trips or anything else relating to" her, the *Campbell* rationale is nonetheless applicable. As in *Campbell,* to hold that the life tenant was given the interest she claims—here a life estate with general power of appointment which would qualify for a marital deduction under § 2056(b)—would be to ignore the testator's intended testamentary plan. The language of Stanley Carpenter's will clearly demonstrates his intent that the trust benefit his daughter, Nancy, as well as his wife, Ernestine. On two separate occasions he references his daughter as a beneficiary of the trust: "I think and want anything left in the Trust to go to *my daughter Nancy;* " and "[o]nly my wife and *daughter* are to benefit from my life's work." (Emphasis added.) Moreover, the will clearly reflects Stanley Carpenter's intention not to convey a life estate directly to his wife, but rather to create a trust to "protect" her so that "no one can dominate or take advantage of her for her entire life." To conclude that he

conveyed to Ernestine a life tenancy with a qualifying general power of appointment would be to disregard all of these specific and deliberate manifestations of testamentary intent. Obviously, this also would be contrary to well established North Carolina law that a testator's intent controls a court's interpretation of a testamentary disposition. *Howell,* 165 S.E.2d at 260–261.

Indeed, concluding that the will gave Ernestine a qualifying general power of appointment over the life estate would be contrary to the plain language of § 2056 that she be able to exercise the power "alone and in all events." 26 U.S.C. § 2056(b). In fact, the regulations promulgated pursuant to this statutory requirement specifically provide that if the widow is not permitted to dispose of her interest "in any manner, including the power to dispose of it by gift[,]" or if exercise of the power requires the "joinder or consent of any other person[,]" it is "not considered to be a power exercisable by a surviving spouse alone and in all events...." 26 C.F.R. § 20.2056(b)–5(g)(3). *See also Wisely,* 893 F.2d at 663 (noting when "the consent of persons other than [the surviving spouse] is required as a condition precedent to distribution of the marital trust income[,]" the interest should not qualify under § 2056(b)(5) for a marital deduction); *United States v. Lincoln Rochester Trust Co.,* 297 F.2d 891, 892–93 (2d Cir.) ("[u]nless the surviving spouse has the right to dispose of the principal by gift or otherwise in her absolute discretion" there is no entitlement to the marital deduction), *cert. denied,* 369 U.S. 887, 82 S.Ct. 1160, 8 L.Ed.2d 287 (1962).

In sum, although there is no North Carolina case directly on point, a review of the relevant authority indicates that, faced with the testamentary language in this case, the Supreme Court of North Carolina would likely conclude that the will did not empower Ernestine to appoint the trust assets to herself and to the deprivation of the remainder holder. Accordingly, Ernestine was not given enforceable rights in a life estate with a general power of appointment to qualify under § 2056(b)[4] for a marital deduction.

---

4. In its reply brief, the Estate argues that 26 C.F.R. § 20.2056(b)–(5)(g)(2) is inconsistent with

§ 2056(b)(5) of the Internal Revenue Code in that § 20.2056(b)–(5)(g)(2) requires the surviving

## III.

■ Even if the interest that passed to Ernestine under the will was a terminable interest, and so did not qualify for the marital deduction, the Estate insists that it was nevertheless entitled to the deduction. This is assertedly so because "the distribution of ... assets to Mrs. Carpenter pursuant to the Family Settlement Agreement ... passed to her in recognition of her enforceable rights in an arms-length settlement of a legitimate will controversy."

Only property that "passes ... from the decedent to his surviving spouse" qualifies for the marital deduction. 26 U.S.C. § 2056(a). Thus, critical to this argument is whether the funds Ernestine Carpenter received pursuant to the settlement agreement with Nancy Reid "passed from" Stanley Carpenter to her. The relevant regulation provides:

> If as a result of the controversy involving the decedent's will, or involving any bequest or devise thereunder, a property interest is assigned or surrendered to the surviving spouse, the interest so acquired will be regarded as having "passed from the decedent to his surviving spouse" *only if the assignment or surrender was a bona fide recognition of enforceable rights of the surviving spouse in the decedent's estate....* If the assignment or surrender was pursuant to a decree rendered by consent, or pursuant to an agreement not to contest the will or not to probate the will, it will not necessarily be accepted as a bona fide evaluation of the rights of the spouse.

26 C.F.R. § 20.2056(c)–2(d)(2) (emphasis added).

spouse to have the power "to appoint the entire interest or a specific portion of it as part of her estate (and free of the trust if a trust is involved) that is, in effect, to dispose of it to whomever she pleases." 26 C.F.R. § 20.2056(b)–(5)(g)(2). The Estate contends that requiring the creation of a power "to dispose of [the trust assets] to whomever she pleases" is contrary to § 2056(b)(5), which provides that a general power of appointment may qualify a surviving spouse for the marital deduction "whether or not in each case the power is exercisable in favor of others...." In fact, these two provisions are consistent:

■ Relying on this language, the Estate contends that the Family Settlement Agreement constitutes the good faith resolution of an arm's length, adversarial dispute between Ernestine Carpenter and Nancy Reid and, for this reason, represents a "bona fide recognition of Ernestine's enforceable rights ... in the decedent's estate." The difficulty with this argument is that the "test" of whether assets pass from the decedent for estate tax purposes is "whether the interest reaches the spouse pursuant to state law, correctly interpreted—not whether it reached the spouse as a result of good faith, adversary confrontation." *Ahmanson Found. v. United States,* 674 F.2d 761, 774 (9th Cir.1981). *Accord Estate of Brandon v. Commissioner of Internal Revenue,* 828 F.2d 493, 499 (8th Cir. 1987). Even good faith settlements of genuine adversarial will disputes do not establish that under state law, a settling party is entitled to rights under the will itself for estate tax purposes. *Estate of Hubert v. Commissioner of Internal Revenue,* 101 T.C. 314, 319 (1993). Rather, a court must examine the basis for the settlement to ensure the claims on which it is grounded are valid, enforceable rights under the will. *Brandon,* 828 F.2d at 499; *Ahmanson Found.,* 674 F.2d at 774.

Furthermore, the enforceability of a widow's rights is to be determined based on her claims existing against the estate "at the time the settlement was reached." *Brandon,* 828 F.2d at 499. Therefore, the proper focus is on the rights a widow received under the terms of the testamentary trust, not on any subsequent rights she may have received from the settlement agreement itself. *See First Nat'l Exchange Bank of Roanoke v. United States,* 335 F.2d 91, 92 (4th Cir.1964) ("[q]ualification for the marital deduction

§ 20.2056(b)–(5)(g)(2) alludes to the surviving spouse's ability to dispose of the trust assets *after* exercising a general power of appointment in favor of herself, while § 2056(b)(5) deals with the ability to exercise the power of appointment in the first place. Moreover, any alleged inconsistency would be irrelevant in this case because both provisions require that an unlimited power of appointment be exercisable in favor of the surviving spouse. Ernestine Carpenter's interest therefore fails to qualify under either the statute or the accompanying regulations.

must be determined as of the time of the [decedent's] death").

■ Because, as we have held above, pursuant to state law, Ernestine did not inherit from Stanley a life estate with a general power of appointment, qualifying under § 2056(b) for a marital deduction, such an interest could not have passed to her in the Family Settlement Agreement. Property transferred pursuant to a settlement agreement—even a bona fide arm's length settlement agreement—will not qualify for a marital deduction if the surviving spouse did not, *prior* to the settlement, have an enforceable right under state law to an interest deductible under § 2056.[5]

### IV.

■ The Estate's final two arguments may be summarily addressed. First, its assertion that it should be entitled to the marital deduction because Ernestine Carpenter could have claimed a deduction under the qualified terminal interest property (QTIP) provisions of 26 U.S.C. § 2056(b)(7) is not preserved for appellate review. Ernestine never attempted to claim the QTIP deduction and so it seems doubtful that the Estate can now even make this argument. *Cf. Estate of Ahlstrom v. Commissioner of Internal Revenue,* 52 T.C. 220, 230–31, 1969 WL 1574 (1969) (no marital deduction where surviving spouse failed to make timely dower election). In any event, because the Estate never raised this argument before the tax court, we do not reach it on appeal. *See Karpa v. Commissioner of Internal Revenue,* 909 F.2d 784, 788 (4th Cir.1990) (declining to address issue not previously raised before tax court).

■ Finally, the Estate contends that disallowance of the marital deduction in this case would violate public policy by putting Ernestine Carpenter in jeopardy of double

taxation. However, this argument assumes that there will be funds remaining from the settlement agreement in her estate at the time of her death. This need not necessarily be the case. Furthermore, this double taxation argument has been consistently rejected. *See Jackson v. United States,* 376 U.S. 503, 509–510, 84 S.Ct. 869, 873, 11 L.Ed.2d 871 (1964); *Estate of Pipe v. Commissioner of Internal Revenue,* 241 F.2d 210, 214 (2d Cir.) ("the possibility of double taxation is not a sufficient basis for allowing a marital deduction if the bequest does not comply with the specific statutory requirements ..."), *cert. denied,* 355 U.S. 814, 78 S.Ct. 15, 2 L.Ed.2d 31 (1957).

*AFFIRMED.*

---

5. The Estate's reliance on our decision in *First Nat'l Exchange Bank of Roanoke* to support its argument that Ernestine's share of the settlement agreement qualifies for the marital deduction is misplaced. In *Roanoke,* a widow renounced her husband's will and exercised her absolute right under Virginia law to claim her dower interest. Our decision in *Roanoke,* permitting the widow to claim the marital deduction with respect to the proceeds of her dower election, hardly con-

trols the present case, which involves neither Virginia law, nor the election of dower. To the extent *Roanoke* is relevant here, it is consistent with our decision in this case. In *Roanoke,* we upheld the allowance of a marital deduction for the amount of the dower interest because the surviving spouse had an "absolute and non-terminable" right to dower. 335 F.2d at 93. Here, Ernestine has no such "absolute and non-terminable" right to the trust assets.