117 T.C. No. 21

UNITED STATES TAX COURT

ESTATE OF HON HING FUNG, DECEASED, BERNARD FUNG, EXECUTOR,
Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2173-00.                    Filed December 10, 2001.

D, a nonresident alien for U.S. tax purposes,
possessed at the time of his death interests in certain
properties located in the State of California.  D's
interests in two of these parcels, one of which was
subject to a promissory note secured by a deed of
trust, were contained in his residuary estate.  D's
will provided for his surviving spouse to receive a
three-eighths fractional interest in his residuary
estate, with the remaining five-eighths going to his
sons.  In accordance with an agreement executed by the
residuary beneficiaries, the two California properties
were distributed to D's surviving spouse while the
foreign residuary assets were distributed to D's sons.

Held:  The full value of D's interest in the
encumbered residuary property, rather than the net
equity value thereof, must be included in his gross
estate.

Held, further, the estate has failed to establish its entitlement to a marital deduction in excess of that allowed by respondent.

Robert B. Martin, Jr., for petitioner.

Ric D. Hulshoff, for respondent.


OPINION


NIMS, Judge: Respondent determined a Federal estate tax deficiency in the amount of $144,980 with respect to the estate of Hon Hing Fung (the estate). The issues for decision are:

(1) Whether a one-half interest owned by Hon Hing Fung (decedent) in certain real property must be included in his gross estate at its full value of $442,500, or whether the property may be included at its net equity value after reduction for an encumbrance in the amount of $324,974; and

(2) whether the estate is entitled to a marital deduction in excess of that allowed by respondent.

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

This case was submitted fully stipulated pursuant to Rule 122, and the facts are so found. The stipulations of the

parties, with accompanying exhibits, are incorporated herein by this reference.  Decedent was a citizen of Hong Kong, legally resident in Kowloon, Hong Kong, when he died testate in the Commonwealth of Massachusetts on September 5, 1995.  At all relevant times, decedent was a nonresident alien for U.S. tax purposes.  Decedent was survived by his wife, Fung Wong Tuen Wang (also known as Norah Fung), likewise a nonresident alien for U.S. tax purposes, and by his five sons.  The executor of decedent's estate, Bernard Fung, maintained his principal residence in the State of California at the time the petition in this case was filed.

At decedent's date of death, he possessed ownership interests in three parcels of real property located in the United States.  Pursuant to community property principles, decedent and his wife each owned a one-half interest in:  (1) 287 Monte Vista Avenue in Oakland, California, consisting of real property improved with a 3-story, 20-unit residential building; and (2) 16597 Calle Victoria in Pacific Palisades, California, consisting of unimproved land.  A third parcel, located at 68 Vernon Street in Oakland, California, and consisting of real property improved with a 3-story, 10-unit residential building, was held by decedent and his wife as joint tenants.

In connection with the Monte Vista property, a promissory note dated October 24, 1988, was executed by decedent and his

wife as borrowers and by World Savings and Loan Association as lender. The note was in the amount of $700,000 and was secured by a deed of trust on the Monte Vista property. The note specified that "Borrower, and each of them, and Borrower's successors, transferees and assigns shall be jointly and severally, directly and primarily, liable for the amount of all sums owing and to be owed hereon". The note further provided the following with regard to remedies upon default:

> Upon the occurrence of any event of default under this Note: (1) the entire unpaid principal balance, any unpaid interest, and any other amounts owing under this Note shall, at the option of the holder of this Note and without notice or demand of any kind to Borrower or any other person, immediately become due and payable; and (2) the holder of this Note shall have and may exercise any and all rights and remedies available at law or in equity and also any and all rights and remedies provided in the Deed of Trust.

> The remedies of the holder of this Note, as provided in this Note and in the Deed of Trust or any other instrument securing this Note, shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole discretion of the holder of this Note, and may be exercised as often as occasion therefor shall arise. No act of omission or commission of the holder, including specifically any failure to exercise any right, remedy or recourse, shall be deemed to be a waiver or release of any right, remedy or recourse, such waiver or release to be effected only through a written document executed by the holder. * * *

As of decedent's date of death, the value of the Monte Vista property was $885,000, and the unpaid balance on the note was

$649,948.[1]  Thus, in accordance with community property
principles, decedent's interest in the property had a value of
$442,500 and was encumbered to the extent of $324,974.

The Calle Victoria property was unencumbered at the time of
decedent's death.  The value of decedent's interest therein,
again pursuant to community property principles, was $435,000.
The Vernon property had a value of $475,000 and was encumbered to
the extent of $277,257.

Decedent provided for the disposition of his property at
death by means of a will executed on September 27, 1988.  The
will first appointed three of decedent's sons as executors and
trustees of his will and directed that "this will shall be
construed according to the Laws of Hong Kong."  Then, after
making a series of specific bequests, the document dealt with
decedent's residuary estate in the manner set forth below:

> 7.   I give the residual and remainder of my estate
> property and effects of whatsoever nature or kind and
> wheresoever situate (including any property over which
> I may have a general power of appointment or
> disposition by will) to my trustees upon trust to sell

---

[1] The parties stipulated that the total unpaid balance was
$649,958 and that the corresponding balance with respect to
decedent's one-half interest was $324,974.  Since one-half of
$649,958 equals $324,979, we conclude that an error was made in
the stipulation.  The estate tax return shows the total
encumbrance as $649,946.67, one-half of which is $324,973.34, and
respondent used the amounts $324,973 and $324,974 in making
calculations which involved one-half of the note's balance.  We
therefore accept the stipulated value of $324,974 as representing
one-half of the encumbrance and assume that the parties intended
$649,948 when referring to the full amount of the debt.

call in and convert the same into money with power to postpone such sale calling in and conversion for so long as they shall in their absolute discretion think fit without being liable for loss.

8.    My trustees shall out of the monies to arise from the sale calling in and conversion of or forming part of my estate pay all my just debts funeral and testamentary expenses and legacies and all estate duty payable in respect of my estate * * *

9.    Subject to the payment of all my just debts, funeral and testamentary expenses, my trustees shall hold my residuary estate property and effects of whatsoever nature or kind and wheresoever situate upon trust for the following beneficiaries who shall survive me for a period of 30 days in manner hereinafter following:-

    (a)  As to THREE (3) equal shares or parts thereof to my wife the said FUNG WONG TUEN WAN * * * for her own use and benefit absolutely.

    (b)  As to ONE (1) equal share or part thereof to my son MICHAEL K.L. FUNG * * * for his own use and benefit absolutely.

    (c)  As to ONE (1) equal share or part thereof to my son the said ANTHONY K.T. FUNG * * * for his own use and benefit absolutely.

    (d)  As to ONE (1) equal share or part thereof to my son the said BERNARD K.K. FUNG * * * for his own use and benefit absolutely.

    (e)  As to ONE (1) equal share or part thereof to my son the said JOHN K.K. FUNG * * * for his own use and benefit absolutely.

    (f)  As to ONE (1) equal share or part thereof to my son the said EDMOND K.H. FUNG * * * for his own use and benefit absolutely.

Decedent's residuary estate included certain property located in Hong Kong as well as the aforementioned Monte Vista and Calle Victoria parcels in California.

In the fall of 1996, documents were filed with the Superior Court of the State of California, County of Los Angeles, regarding the disposition of decedent's property located in that State.  Decedent's wife filed a SPOUSAL PROPERTY PETITION, and later a SUPPLEMENT to such petition, requesting a "determination of property passing to the surviving spouse without administration" and a "confirmation of property belonging to the surviving spouse".  In connection with this action, an AGREEMENT ABOUT DISTRIBUTION OF DECEDENT'S ESTATE was filed with the Superior Court.  The agreement was executed by each of decedent's five sons in August of 1996 and recited that the residuary beneficiaries

> agree to allocate to Decedent's spouse, FUNG WONG TUEN WAN, also known as NORAH FUNG, as her 3/8ths share of the Residue, all of Decedent's right, title and interest in the Real Property [defined as the Monte Vista and Calle Victoria properties], and to allocate to each of Decedent's children as his 1/8th of the Residue, 1/5th of that portion of the Residue located in Hong Kong.

After an uncontested hearing, the Superior Court on December 3, 1996, issued an ORDER APPROVING SPOUSAL PROPERTY PETITION.  The order confirmed the passing of the Monte Vista and Calle Victoria parcels to decedent's surviving spouse and her ownership thereof.  On the following day, December 4, 1996, decedent's wife transferred the interest formerly owned by decedent that she received in these properties, as well as the Vernon parcel, to the Norah Fung Qualified Domestic Trust.  The parties have

stipulated that the trust was, at the time of its establishment on December 4, 1996, a "qualified domestic trust" under the applicable provisions of section 2056A.

In addition, the parties have further stipulated that as of October 22, 1996, all estate duty payable to the Hong Kong Government, if any, and all debts, liabilities, funeral expenses, and testamentary expenses with respect to decedent's estate in Hong Kong had been provided for or paid. Accordingly, as of October 22, 1996, the residual beneficiaries were entitled under Hong Kong law to their respective shares in the residuary estate absolutely and could demand distribution thereof.

A Form 706-NA, United States Estate (and Generation-Skipping Transfer) Tax Return, Estate of nonresident not a citizen of the United States, was timely filed with respect to decedent's estate on December 5, 1996.[2] The notice of deficiency on which this litigation is based was subsequently issued on November 30, 1999.[3] Therein, respondent determined that the estate was not entitled to report decedent's interest in the Monte Vista real property at its net equity value for gross estate purposes and that the marital deduction claimed by the estate should be reduced.

---

[2] App. A sets forth the calculations shown on the estate tax return.

[3] App. B describes respondent's computations, to the extent ascertainable from the notice of deficiency.

## Discussion

I.  General Rules

A.  Estate Tax Principles

As a general rule, the Internal Revenue Code imposes a Federal tax "on the transfer of the taxable estate (determined as provided in section 2106) of every decedent nonresident not a citizen of the United States."  Sec. 2101(a).  Such taxable estate, in turn, is defined in section 2106(a) as "the value of that part of * * * [a decedent's] gross estate which at the time of his death is situated in the United States", less applicable deductions.  Section 2103 then specifies that the gross estate of a nonresident alien "shall be that part of his gross estate (determined as provided in section 2031) which at the time of his death is situated in the United States."  Hence, the gross estate of a nonresident alien comprises "all property, real or personal, tangible or intangible", to the extent provided in sections 2033 through 2045, so long as that property is located in the United States.  Secs. 2031(a), 2103.  Section 2033 broadly states that "The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death."

As regards the deductions permitted to nonresident aliens, section 2106(a)(1) provides for allowance of that proportion of the deductions specified in section 2053, relating to expenses,

indebtedness, and taxes, "which the value of such part [i.e., the part of the decedent's gross estate which at the time of his death is situated in the United States] bears to the value of his entire gross estate, wherever situated."  If the surviving spouse is not a citizen of the United States, a marital deduction pursuant to section 2056 is allowed only where the subject property passes or is treated as passing to the surviving spouse in a qualified domestic trust.  Sec. 2056(d)(1) and (2).  The parties here do not dispute that the technical criteria relating to a qualified domestic trust will be considered satisfied so long as other substantive requirements for the marital deduction are met.

B.  Burden of Proof

In general, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a).  Although recently enacted section 7491 may operate in specified circumstances to place the burden on the Commissioner, the statute is effective only for court proceedings that arise in connection with examinations commencing after July 22, 1998.  Internal Revenue Restructuring & Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727.  Since the record here is devoid of evidence showing that the underlying examination began after the relevant date, and since the estate

has at no time contended that the provisions of section 7491 are applicable, we conclude that the traditional burden remains upon the estate.

## II. Treatment of Monte Vista Property for Gross Estate Purposes

The parties in this case differ as to the treatment for gross estate purposes of decedent's interest in the Monte Vista property. The estate contends that the parcel should be included in the gross estate at its net equity value, after offsetting the portion of the indebtedness considered to burden decedent's one-half interest in the property. Respondent, in contrast, takes the position that decedent's interest in the parcel must be included in the gross estate at its full fair market value, with the associated indebtedness being allowed as a deduction only to the extent provided in sections 2106(a)(1) and 2053.

Section 2053(a)(4) specifies that deductions allowable in computing the taxable estate include amounts "for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate". Regulations promulgated under this section further explain:

> A deduction is allowed from a decedent's gross estate of the full unpaid amount of a mortgage upon, or of any other indebtedness in respect of, any property of the gross estate, including interest which had accrued thereon to the date of death, provided the value of the property, undiminished by the amount of

the mortgage or indebtedness, is included in the value of the gross estate.  If the decedent's estate is liable for the amount of the mortgage or indebtedness, the full value of the property subject to the mortgage or indebtedness must be included as part of the value of the gross estate; the amount of the mortgage or indebtedness being in such case allowed as a deduction.  But if the decedent's estate is not so liable, only the value of the equity of redemption (or the value of the property, less the mortgage or indebtedness) need be returned as part of the value of the gross estate. * * * [Sec. 20.2053-7, Estate Tax Regs.]

The validity of this regulation, and its applicability to the estate of a nonresident alien, has long been established.  In the words of this Court in Estate of Johnstone v. Commissioner, 19 T.C. 44, 46 (1952):

If a particular debt can be collected only from property mortgaged to secure the debt and not from the estate generally, the full amount of the debt should be excluded even in the case of a nonresident alien, but if it can be collected from the estate generally, and a part of that estate is not being taxed in the United States, then it is appropriate to allow only a proportionate part of the debt to be deducted. * * *

Both parties appeal to the above-quoted regulation in support of their respective positions.  Respondent maintains that because decedent was personally liable for the indebtedness at issue by the terms of the promissory note, the full value of his interest in the Monte Vista property must be returned as part of the gross estate.  The estate, on the other hand, does not specifically deny that decedent was legally liable for the debt evidenced by the promissory note.  Rather, the estate argues that "the Petitioner had no realistic personal liability for the debt

on the Monte Vista Property" and that "The mere possibility that a lender might have made a claim against the estate on the Monte Vista note is insufficient to conclude that the estate was personally liable for the obligation."

The estate's argument rests on the provisions governing deeds of trust under California law, specifically that contained in Cal. Civ. Proc. Code sec. 580d (West 1976 & Supp. 1995). The statute reads, in pertinent part:

> No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property or an estate for years therein hereafter executed in any case in which the real property or estate for years therein has been sold by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust. [Id.]

The effect of such section is to prevent a lender who chooses to foreclose on a deed of trust by means of a nonjudicial sale, under the power of sale contained in the trust instrument, from thereafter seeking a deficiency judgment against the debtor. Cornelison v. Kornbluth, 542 P.2d 981, 989-990 (Cal. 1975). At the same time, however, the Supreme Court of California has also made clear that a nonjudicial sale is not the only enforcement remedy available to the lender holding a deed of trust:

> 'It seems clear that section 580d was enacted to put judicial enforcement on a parity with private enforcement. This result could be accomplished by giving the debtor a right to redeem after a sale under the power. The right to redeem, like proscription of a deficiency judgment, has the effect of making the security satisfy a realistic share of the debt. * * * By choosing instead to bar a deficiency judgment after

> private sale, the Legislature achieved its purpose without denying the creditor his election of remedies. If the creditor wishes a deficiency judgment, his sale is subject to statutory redemption rights. If he wishes a sale resulting in nonredeemable title, he must [forgo] the right to a deficiency judgment. In either case the debtor is protected.' [Id. at 990 (quoting Reseleaf Corp. v. Chierighino, 378 P.2d 97, 102 (Cal. 1963)).]

Hence, the statute does not eradicate the possibility of personal liability.

Nonetheless, the estate avers that "It is the near universal practice in California to foreclose on a deed of trust through a nonjudicial foreclosure under the power of sale" and that such would be particularly appropriate in the case of property held by the estate of a nonresident alien. From this proposition, the estate concludes that "this entirely theoretical liability" does not render the estate personally liable within the meaning of section 20.2053-7, Estate Tax Regs. The estate also argues that its position is supported by caselaw allegedly holding, in the estate's words, that "a secondary or remote possibility that an estate might have personal liability for the amount of the mortgage was not enough to establish it as a claim against the estate under section 2053(a)(3)."

We disagree with the estate's contention that "a practical approach is mandated" in resolving the question at issue. As a threshold matter, we note that the standard applied under section 2053(a)(3), relating to claims against the estate, is not

controlling where, as here, we are dealing with mortgage indebtedness under section 2053(a)(4). (Respondent cites only section 2053(a)(4) in support of the Government's position on inclusion.) Moreover, while we pointed out in Estate of Theis v. Commissioner, 81 T.C. 741, 749-750 (1983), affd. 770 F.2d 981 (11th Cir. 1985), that section 2053(a)(4) was not intended to apply where the decedent was only secondarily liable or an accommodation party, we went on to state that "Section 20.2053-7, Estate Tax Regs., like section 2053(a)(4), was intended to cover situations involving the liability for mortgages on a decedent's own property." Thus, Estate of Theis v. Commissioner, supra, hardly stands for the principle that practicalities should override legal liability where a decedent is the named primary obligor, on an explicitly recourse note, encumbering his or her own fee interest in a parcel, particularly where the transaction involved no third parties whom the decedent might have been accommodating.

Furthermore, this Court has previously embraced the notion that potential liability can be sufficient for purposes of section 20.2053-7, Estate Tax Regs., in a case somewhat analogous to that now before the Court. In Estate of Linderoth v. Commissioner, T.C. Memo. 1986-547, a residence was encumbered by deeds of trust securing promissory notes. The property was located in Nevada, where a statutory "one action rule" could

operate to restrict the remedies available to a lender.  <u>Id.</u>  The taxpayer argued that since the value of the residence exceeded the amount of the debt, the estate would not be liable for the encumbrances under the one action rule.  <u>Id.</u>  The Commissioner, on the other hand, contended "that the estate is at least potentially liable on the encumbrances, and therefore, the full value of decedent's interest in the residence is includable in the gross estate".  <u>Id.</u>  We held for the Commissioner.  <u>Id.</u>

Given the foregoing, we are unable to agree with the estate that decedent's express legal liability on his own interest in the disputed property may be disregarded in applying section 20.2053-7, Estate Tax Regs.  Both the subject promissory note and State law afforded the lender a choice of remedies, one of which included the imposition of personal liability.  Yet the estate asks us to eliminate one of those alternatives on mere generalities and assumptions regarding creditor preference.  We decline to do so.  We hold that the full value of decedent's interest in the Monte Vista property must be included as part of his gross estate, with a corresponding deduction allowed to the extent permitted by the Internal Revenue Code.

III.  <u>Extent of Entitlement to Marital Deduction</u>

Section 2056(a) authorizes a deduction from the gross estate of "an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving

spouse". The parties in this case disagree as to the proportion of the California real estate contained in decedent's residuary estate which should be considered to have passed from him to his surviving spouse for purposes of the section 2056 deduction, and we note that this appears to be a matter of first impression.

Following execution of a distribution agreement by decedent's residuary beneficiaries and in accordance with an order by the California Superior Court, decedent's wife received decedent's one-half interest in both the Monte Vista property and the Calle Victoria property. Regulations promulgated under section 2056 provide as follows with regard to will contests and other assignments or surrenders of property in the context of the marital deduction:

> If as a result of the controversy involving the decedent's will, or involving any bequest or devise thereunder, a property interest is assigned or surrendered to the surviving spouse, the interest so acquired will be regarded as having "passed from the decedent to his surviving spouse" only if the assignment or surrender was a bona fide recognition of enforceable rights of the surviving spouse in the decedent's estate. Such a bona fide recognition will be presumed where the assignment or surrender was pursuant to a decision of a local court upon the merits in an adversary proceeding following a genuine and active contest. However, such a decree will be accepted only to the extent that the court passed upon the facts upon which deductibility of the property interests depends. If the assignment or surrender was pursuant to a decree rendered by consent, or pursuant to an agreement not to contest the will or not to probate the will, it will not necessarily be accepted as a bona fide evaluation of the rights of the spouse. [Sec. 20.2056(c)-2(d)(2), Estate Tax Regs.]

In construing this regulation, courts have explained that "the 'test' of whether assets pass from the decedent for estate tax purposes is 'whether the interest reaches the spouse pursuant to state law, correctly interpreted--not whether it reached the spouse as a result of good faith, adversary confrontation.'" Estate of Carpenter v. Commissioner, 52 F.3d 1266, 1273 (4th Cir. 1995) (quoting Ahmanson Found. v. United States, 674 F.2d 761, 774 (9th Cir. 1981)), affg. T.C. Memo. 1994-108. A settlement must be based on valid, enforceable rights under the will and State law at the time the settlement was reached in order for property received thereunder to qualify for the marital deduction. Id.; see also Estate of Hubert v. Commissioner, 101 T.C. 314, 319 (1993), affd. 63 F.3d 1083 (11th Cir. 1995), affd. 520 U.S. 93 (1997). The principle just enunciated is a corollary to the general rule that "Qualification for the marital deduction must be determined as of the time of * * * death." First Natl. Exch. Bank v. United States, 335 F.2d 91, 92 (4th Cir. 1964). Accordingly, in situations such as that now before the Court, "the proper focus is on the rights a widow received under the terms of the testamentary * * * [instrument], not on any subsequent rights she may have received from the settlement agreement itself." Estate of Carpenter v. Commissioner, supra at 1273.

In light of the foregoing, the estate contends a marital deduction is allowable for the full value of decedent's interest in the California property received by the surviving spouse, while respondent maintains that only three-eighths of the value of decedent's interest in the Monte Vista and Calle Victoria parcels may be considered in computing the deduction.

More specifically, the estate's position is that "The U.S. property received by the surviving spouse was in bona fide recognition of her rights to 3/8ths of the entire residue of decedent's estate and therefore passed from the decedent." Respondent, in contrast, interprets the language of the will as granting to the surviving spouse only an undivided three-eighths interest in each residuary asset. Thus, as framed by the parties, the dispute turns on what rights in the residuary pool were afforded to decedent's wife by the terms of his will and Hong Kong law.

However, we need not address this challenging question of will construction. Even if we were to assume for the sake of argument that the fractional share legacy set forth in decedent's will could be construed as a right to three-eighths of the

residue as a whole,[4] the estate has failed to prove the amount of the allowable deduction.  See Rule 122(b).  The estate at no time offered evidence to establish the value of the foreign residuary assets.  The sole allegation regarding a specific dollar figure for the foreign residue appears to be a statement in the uncontested distribution agreement filed by decedent's beneficiaries in connection with the California spousal property petition, wherein it is recited that "The residue consists of certain property located in Hong Kong having an estimated value of U.S. $600,000."  Such statement is by its very terms an estimate or approximation and falls short of constituting reliable proof.  In addition, although both parties seem to have accepted $729,339 as the value of the foreign gross estate, they have not identified the portion of that amount which was administered under the residuary clause of decedent's will.  A similar shortcoming adheres with respect to the assets lists accompanying the Hong Kong CERTIFICATE OF EXEMPTION FROM ESTATE DUTY, which, while included as part of the record, have been offered without further explanation of the relationship, if any, of the enumerated items to the provisions of decedent's will.

---

[4] It is by no means certain that this argument would prevail.  See discussions by the following well-known commentators:  4 Casner, Estate Planning, sec. 13.5.2, at 87 (5th ed. 1988); Manning et al., Manning on Estate Planning, sec. 2.7, at 2-31 (5th ed. 2001); Covey, The Marital Deduction and the Use of Formula Provisions, 95 (2d ed. 1978).

Accordingly, we have no means by which to ascertain that the deduction claimed for the parcels received by the spouse under the distribution agreement did not exceed three-eighths of the total value of the residue.

Thus, because the estate has failed to carry its burden of proof with regard to the facts necessary to sustain its own substantive legal argument, we need not decide whether such approach is sustainable under the law.  We simply hold that the estate has failed to prove that it is entitled to a marital deduction greater than that allowed by respondent.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.

Appendix A

The Estate's Calculations As Per Return (Rounded)

Gross Estate

Monte Vista:

| | | |
|---|---|---|
| Appraised value | $885,000 | |
| Less: Encumbrances | (649,947) | |
| Net equity value | [1]237,053 | |
| Less: One-half interest | (118,527) | |
|     Gross estate value | | $118,526 |

Calle Victoria:

| | | |
|---|---|---|
| Appraised value | 870,000 | |
| Less: One-half interest | (435,000) | |
|     Gross estate value | | 435,000 |

Vernon:

| | | |
|---|---|---|
| Appraised value | 475,000 | |
| Less: Encumbrances | (277,257) | |
|     Gross estate value | | 197,743 |

| | |
|---|---|
| GROSS ESTATE IN UNITED STATES | 751,269 |
| GROSS ESTATE OUTSIDE UNITED STATES | 729,339 |
|   TOTAL GROSS ESTATE | 1,480,608 |

---

[1] $885,000 minus $649,947 equals $235,053, one-half of which would be $117,527 (rounded), but it appears a mathematical error was made on the return.

Deductions

Expenses, claims, etc.
    amount claimed                                 [2]$50,081

Marital deduction
    Value of property passing to surviving spouse
        Monte Vista        $118,526
        Calle Victoria     435,000
        Vernon           197,743
    Available amount            $751,269

    Less: Deduction claimed for
         expenses/claims          (50,081)

    Claimed marital deduction             701,188

  TOTAL DEDUCTIONS CLAIMED             751,269

Taxable Estate

    Gross estate in United States       751,269
    Less: Deductions             (751,269)

TAXABLE ESTATE                   - 0 -

---

[2] This amount should equal the percentage of total expenses/claims which corresponds to the ratio of value of the gross estate in the United States to total gross estate value. Again, however, there appears to be a mathematical discrepancy as the total expenses/claims are shown to be $97,404 on the return.

Appendix B

Respondent's Calculations As Per Notice of Deficiency

Gross Estate

Monte Vista:

| | | |
|---|---|---|
| Appraised value | $885,000 | |
| Less: One-half interest | (442,500) | |
| Gross estate value | | $442,500 |

Calle Victoria:

| | | |
|---|---|---|
| Appraised value | 870,000 | |
| Less: One-half interest | (435,000) | |
| Gross estate value | | 435,000 |

Vernon:

| | | |
|---|---|---|
| Appraised value | 475,000 | |
| Less: Encumbrances | (277,257) | |
| Gross estate value | | 197,743 |

| | |
|---|---|
| GROSS ESTATE IN UNITED STATES | 1,075,243 |
| GROSS ESTATE OUTSIDE UNITED STATES | 729,339 |
| TOTAL GROSS ESTATE | 1,804,582 |

Deductions

Expenses, claims, etc.
   amount allowed                                          [1]$258,944

Marital deduction
   Available amount attributable to each item of U.S. property
   passing to surviving spouse
         Monte Vista          [2]$166,313
         Calle Victoria       [3]163,125
         Vernon               [4]197,743
      Total                                    $527,181

   Less: Three-eighths share of
         taxes, debts, and expenses
         payable out of the residue            (217,293)

   Allowed marital deduction                                309,888

   TOTAL DEDUCTIONS ALLOWED                                 568,832


Taxable Estate

   Gross estate in United States              1,075,243
   Less: Deductions                           (568,832)

TAXABLE ESTATE                                           [5]506,412

---

[1] This amount takes into account one-half of the unpaid balance on the Monte Vista mortgage, or $324,973, reduced in accordance with the ratio of U.S. to total gross estate value.

[2] It appears that this amount was likely intended to equal three-eighths of the value of decedent's one-half interest in the parcel ($442,500 x .375 = $165,938 (rounded)). The mathematical discrepancy is not explained.

[3] This amount equals three-eighths of the value of decedent's one-half interest in the parcel ($435,000 x .375 = $163,125).

[4] This amount equals the full gross estate value of decedent's interest in the parcel. It would appear that no five-eighths reduction was applied because the property passed to the surviving spouse pursuant to the joint tenancy form of ownership, as opposed to under the residuary clause of decedent's will.

[5] The $1 discrepancy ($1,075,243 - $568,832 = $506,411) is not explained and presumably results from rounding.